[Cite as *State v. Wallace*, 2012-Ohio-6270.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | OPINION |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| AMANDA WALLACE, et al. | ) | CASE NOS. 11 MA 137-145 |
| | ) | 11 MA 149-155 |
| | ) | |
| AMANDA M. SHERRILL | ) | CASE NO. 11 MA 146 |
| | ) | |
| LEANN M. PHILLIPS | ) | CASE NO. 11 MA 147 |
| | ) | |
| CASSANDRA M. FRICKER | ) | CASE NO. 11 MA 148 |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the County Area Court No. 4 of Mahoning County, Ohio Case Nos. 10CRB402; 10CRB403; 10CRB404; 10CRB410-418; 10CRB420-423; 10CRB419; 10CRB367, 369; 10CRB412; 10CRB388, 389; 10CRB397; 10CRB406-407; 10CRB398-399; 10CRB368, 370, 372, 374, 377; 10CRB383; 10CRB373, 375-376, 378; 10CRB390-391; 10CRB371; 10CRB387; 10CRB393

JUDGMENT: Reversed. Vacated. Charges Reinstated.

JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Frank D. Celebrezze, Jr. of the Eighth District Court of Appeals Sitting by Assignment

Dated: December 31, 2012

[Cite as *State v. Wallace*, 2012-Ohio-6270.]
APPEARANCES:

For Plaintiff-Appellant:                    Atty. Paul J. Gains
                                            Mahoning County Prosecutor
                                            Atty. Ralph M. Rivera
                                            Assistant Prosecuting Attorney
                                            21 West Boardman Street, 6th Floor
                                            Youngstown, Ohio  44503


For Defendant-Appellee:                     Atty. James Vitullo
                                            5232 Nashua Drive, Suite 5
                                            Austintown, Ohio  44515-5122

                                            Atty. Mark A. Hanni
                                            839 Southwestern Run
                                            Youngstown, Ohio  44514

WAITE, P.J.

{¶1}   These 19 related appeals involve numerous charges of prostitution against dancers (Appellees) working at the GoGo Girls Cabaret ("Cabaret") in Austintown, a suburb of Youngstown, Ohio. The charges were filed in Mahoning County Area Court No. 4, Austintown. The charges stem, in part, from information obtained off of computers seized from the Cabaret, pursuant to a warrant. On these computers were security camera recordings that showed the dancers performing for patrons in private rooms in the Cabaret. The state intended to use the videos as evidence of prostitution. Several of the Appellees filed motions to suppress the security camera recordings. They claimed that the warrants were deficient under the Fourth Amendment and that the state violated state and federal wiretap laws in gathering this evidence. Appellees also filed motions to dismiss the charges entirely. The court granted both motions for all of the Appellees and this prosecutor's appeal on behalf of the state was filed.

{¶2}   The state presents three arguments on appeal. First, Appellant argues that not all the Appellees filed the appropriate motions to have the evidence suppressed or the charges dismissed. A court may *sua sponte* dismiss criminal charges. No reversible error exists even if we were to determine that not all of the Appellees filed motions to dismiss. The record reflects that an agreement was reached between the prosecutor, the defense attorneys, and the trial judge that all the cases involving the Appellees would be treated together with respect to the issue of suppression of evidence. This agreement was made on the record and constitutes an oral motion to suppress evidence and to dismiss the charges for those defendants

who did not file written motions. Therefore, all 19 Appellees will be treated identically in these appeals as though all had raised these arguments in writing before the trial court.

{¶3} Second, Appellant argues that Appellees had no standing under the Fourth Amendment to challenge the search of the Cabaret because they were independent contractors rather than employees. Appellant posits that independent contractors have no privacy interest that is protected by the Fourth Amendment. Appellant further contends that even if Appellees had standing, their substantive objections to the search warrants and seized evidence have no basis in law. Appellant's argument regarding the status of the dancers as independent contractors is not supported by the record or by caselaw. We do agree, however, that even assuming that Appellees had standing to object to the search warrants or to the seizure of the computers and the security camera videos, their substantive objections to the search warrants and evidence resulting from the search are not supported by the record or the relevant legal precedent.

{¶4} Appellees' main objections to the seizure of the videos are that: 1) the warrants were requested based on illegally intercepted conversations procured by confidential informants; and 2) the security camera videos themselves represent illegally intercepted communications. Appellees' reasons for seeking suppression of the videos are not supported by the record, the Fourth Amendment, or wiretap law. Police may use a consenting informant to record conversations about illegal activities. The security camera recordings do not present a Fourth Amendment

violation because they were recorded by a private party rather than the state or an agent of the state. The security camera recordings do not violate state or federal wiretap laws because security video recordings do not qualify as "wire, oral, or electronic communication" as defined in the wiretap statutes. R.C. 2933.51. Furthermore, the warrants in this case carried a presumption of validity, and the burden of proof was on the Appellees to prove that the warrants and searches violated the Fourth Amendment or wiretap statutes. Appellees did not offer any proof on these issues and simply challenged the warrants on their face. The warrants are facially valid, and there was no basis for the trial court to suppress any evidence collected pursuant to the warrants. Therefore, the trial court should not have suppressed the videos and Appellant's second assignment of error has merit.

{¶5} Appellant's third and final argument is that the trial judge exceeded the scope of the pre-trial motions to dismiss when it viewed and evaluated the security camera videos as to whether the dancers were engaging in activity protected by the First Amendment. Appellant argues that a pre-trial motion to dismiss only allows the trial judge to examine the four corners of the complaint and does not allow for the weighing of evidence. This argument also has merit. The trial judge evaluated the videos and made a factual determination that no act of prostitution was taking place, and for that reason, he dismissed the charges. This went beyond the scope of a pre-trial motion to dismiss, and the charges must be reinstated. Appellant's arguments on appeal regarding the motion to suppress and the dismissal of the charges are

persuasive, and the judgment of the trial court is hereby reversed. All charges on all Appellees are hereby reinstated.

## History of the Cases

{¶6} On or about April 27, 2010, Detective Sergeant Jeffrey Solic of the Austintown Township Police Department filed misdemeanor prostitution charges against the 19 defendants who are the Appellees in these appeals. The acts of prostitution allegedly occurred in April and May of 2009. The charges arose after Det. Solic obtained and executed search warrants on May 15, 2009 to search the Cabaret and seize evidence of drug trafficking and prostitution, including seizure of the Cabaret's computers. Those computers contained videos of women performing acts that the state determined should be charged as acts of prostitution. Det. Solic filed charges against the 19 Appellees, alleging that they engaged in prostitution in violation of R.C. 2907.25(A), a misdemeanor.

{¶7} On July 15, 2010, Appellees filed motions for discovery to obtain the video recordings. A hearing was held on October 6, 2010 on the discovery motion, but that hearing transcript is not in the record. After receiving the videos most of the Appellees filed motions to suppress, alleging a variety of errors. These included allegations that the warrant affidavits contained false information; the warrant affidavits failed to establish probable cause; the warrants were impermissibly broad; the warrants failed to identify the items to be seized and searched, including computers; and the warrant was stale by the time the computers were examined. The suppression motions also challenged violations of the Electronic

Communications Privacy Act, 18 U.S.C. 2510-2520; violations of Ohio's electronic surveillance statutes, R.C. 2933.51 et seq.; statutory prohibitions on using electronic surveillance to obtain evidence of prostitution; that the state failed to obtain a necessary interception warrant; and an allegation that the warrant to search for drugs was a pretext for obtaining evidence of prostitution.

**{¶8}** The trial court held a hearing for some of the Appellees on January 5, 2011, but any hearing transcript is not part of this record on appeal. The security camera video recordings and some of the documentary evidence introduced at the hearing are part of the record.

**{¶9}** The court did not immediately rule on the motions to suppress after the January 5, 2011, hearing. The court held another hearing for more of the Appellees on January 12, 2011. This transcript is in the record. This hearing mainly dealt with a motion that Appellees had filed that same day seeking to certify the record to this Court in order to resolve a jurisdictional matter. The court denied the motion to certify and did not immediately rule on the motion to suppress.

**{¶10}** On May 19, 2011, Appellees filed motions to dismiss the charges on the grounds that the charged activity was lawful under the First Amendment and that there was a federal injunction in effect prohibiting prosecution for lap dances.

**{¶11}** The court held a hearing on June 8, 2011 to further resolve the motions to suppress and to deal with the most recent motions to dismiss. The court attempted to conduct a bench trial on the charges, but the prosecutor objected and

the hearing was limited to the motions to suppress and the motions to dismiss. (6/8/11 Tr., pp. 18-19.)

{¶12} The parties discussed state and federal wiretap laws, and fundamentally disagreed on the most basic question of whether wiretapping had even occurred in this case. The parties then engaged in a lengthy discussion about whether the court's ruling would apply to all of the criminal cases pending against the exotic dancers at the Cabaret. (6/8/11 Tr., pp. 57-64.) The prosecutor eventually agreed that the judge's ruling would apply to all the pending cases as long as the Appellees agreed. (6/8/11 Tr., p. 79.)

{¶13} The parties also discussed whether the court should view the video recordings that were the main subject matter of the motions to suppress and motions to dismiss. The court decided that it was proper to view the videos.

{¶14} On September 2, 2011, the trial court granted the motions to suppress and the motions to dismiss. The court held that dances recorded on the videos did not depict sexual activity as defined by R.C. 2907.01, and that without any proof of sexual activity, no charges of prostitution could be maintained. The court filed the same judgment entry in every case involving every Appellee charged as a result of the evidence contained in the confiscated computers and videos.

{¶15} The state filed prosecutors' appeals in 19 of the cases. The state appealed both the suppression of the videos and the decision to grant the motions to dismiss. The record on appeal consists of the 19 trial court case files, 2 transcripts (from January 12, 2011 and June 8, 2011), and file folders of evidentiary materials

that are not clearly associated with any particular hearing. The parties have each filed briefs. Oral argument was held on September 6, 2012. Appellant subsequently filed a notice of supplemental authority on September 12, 2012. Appellees object to the supplemental authority on the grounds that Appellant has also submitted a brief with its supplemental authority, and there is no provision for briefs to be filed after oral argument or in addition to the briefing described in the Ohio Rules of Appellate Procedure. Appellees are correct. App.R. 21(H) allows parties to submit additional authority to the Court and to the opposing party that will be used at oral argument, and we generally allow parties to submit additional controlling caselaw that becomes available even after oral argument has taken place. Prof.Cond.R. 3.3(a)(2) places a duty on all attorneys to keep the Court informed of controlling caselaw at all stages of the litigation. These rules, though, do not allow parties to supplement with additional memoranda of law. There is no provision in the Rules of Appellate Procedure for filing additional briefs after oral argument except in the very rare circumstances where we directly order supplemental arguments to be filed. Appellant's memorandum in support of its supplemental authority is stricken from the record.

<u>ASSIGNMENT OF ERROR NO. 1</u>

> THE TRIAL COURT ERRED IN GRANTING DEFENDANTS MICHELLE BENNER AND JASMIN ROQUE'S MOTIONS TO SUPPRESS, BECAUSE NEITHER DEFENDANT FILED A MOTION TO SUPPRESS IN COMPLIANCE WITH CRIMINAL RULE 47.

{¶16} In this assignment of error Appellant advances the procedural argument that five of the Appellees failed to file a written motion to suppress or a motion to dismiss with the trial court. Therefore, they should not be able to take advantage of the trial court's rulings in favor of the Appellees who did file appropriate pre-trial motions. The five Appellees of whom Appellant complains are: Amanda M. Sherrill, Cassandra M. Fricker, Leann M. Phillips, Michelle Benner, and Jasmin Roque.

{¶17} Appellant bases this argument on Crim.R. 47, which states that "[a]n application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally." The rule provides that the motion shall state with particularity the grounds on which it is made and shall be supported by a memorandum of authority or by affidavit. Appellant also appears to argue that the state was not properly apprised of the issues being raised by the Appellees because five of them are relying on motions filed by others.

{¶18} A trial court may *sua sponte* grant a motion to dismiss, and Appellant's argument is not well-taken with respect to the failure of certain Appellees to file written motions to dismiss. *See* Crim.R. 48(B); *State v. Busch*, 76 Ohio St.3d 613, 616, 669 N.E.2d 1125 (1996).

{¶19} The fact that there are no written motions to suppress in some of the case files would normally be resolved very easily: if the motion was not made, the motion could not be granted. A trial court cannot *sua sponte* issue and then grant a motion to suppress. *State v. Hamilton*, 97 Ohio App.3d 648, 647 N.E.2d 238 (3d

Dist.1994). Although we agree with Appellant that no written motions to suppress were filed by some of the Appellees, Crim.R. 47 explicitly allows for oral motions. We note that there were discussions on the record regarding the motions to suppress that should be regarded as oral motions. At the June 8, 2011, motion hearing, the parties debated whether all the Appellees needed to have a hearing when the issues regarding each were exactly the same. (6/8/11 Tr., pp. 17ff.) The purpose of the June 8, 2011, hearing was to resolve motions to suppress and motions to dismiss for three specific Appellees: Erica Jackson, Jessica Scarsella and Nicole Montecalvo. The parties and the court were aware that all the Appellees were going to present essentially the same arguments presented in the Jackson, Scarsella and Montecalvo cases. The parties and court eventually agreed that the court's ruling would apply to all the Appellees who had been prosecuted based on the video recordings confiscated from the Cabaret. (6/8/11 Tr., p. 79.) Since some of the Appellees had filed written motions and had a hearing on the motions and the issues were identical for all Appellees, there was no need for the remaining Appellees to file separate written motions or memoranda in support. The matters in dispute were thoroughly discussed up to and including the June 8, 2011, hearings and we conclude that any Appellee who did not file written motions have preserved their arguments on appeal due to the oral motions made on their behalf at the June 8, 2011, hearing.

{¶20} Appellant correctly cites the general rule in suppression cases that a defendant must " 'raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the

challenge.' " *State v. Kale*, 7th Dist. No. 08 MA 47, 2009-Ohio-6530, ¶13, quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph one of the syllabus. In this appeal, the state was properly apprised of the issues being raised because all of the Appellees are making the same claims and these claims were fully briefed and argued in the trial court. Further, there are no new issues raised on appeal that were not raised in the trial court. The unusual event in this case was that the trial judge and the parties, apparently for purposes of judicial economy, decided that the remaining Appellees did not need to have separate hearings or take any further action because the issues for all were the same, and a single, global judgment entry from the trial judge would suffice and could be filed in each case. (6/8/11 Tr., p. 79.)

{¶21} Appellant cites a number of inapposite cases in which a trial court incorrectly suppressed evidence even though the matter being decided was never raised in a manner calculated to give the prosecutor adequate notice or to allow for a proper response. *State v. Lautzenheiser*, 77 Ohio App.3d 461, 602 N.E.2d 705 (3d Dist.1991); *State v. Hooker*, 64 Ohio App.3d 631, 582 N.E.2d 636 (6th Dist.1989). In the instant cases, though, the state has not been surprised or denied due process in defending against the motions to suppress. There is no blatant disregard for the rule of law as Appellant suggests, particularly when the record reflects that Appellant agreed to the course of action taken by the trial judge. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO SUPPRESS, BECAUSE THEIR STATUS AS INDEPENDENT CONTRACTORS DEMONSTRATED THAT THEY HAD NO REASONABLE EXPECTATION OF PRIVACY IN THE PREMISES OWNED BY A SEPARATE BUSINESS ENTITY; THEREFORE, DEFENDANTS HAD NO STANDING TO CHALLENGE THE SEARCH OF THE CABARET AND SUBSEQUENT SEARCH OF THE COMPUTERS SEIZED THEREIN.

**{¶22}** Appellant's second assignment of error challenges the trial court's ruling granting the motion to suppress. In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.; see also, State v. Culberson,* 142 Ohio App.3d 656, 660, 756 N.E.2d 734 (7th Dist.2001).

**{¶23}** Appellant argues that the dancers at the Cabaret were independent contractors and not employees, and for this reason they had no standing to raise a Fourth Amendment challenge to the search warrants (and the evidence seized

pursuant to the warrants). Appellant contends that independent contractors, unlike employees, do not have a reasonable expectation of privacy in the premises of their employer and cannot challenge a search of the premises. Appellant also argues that neither state nor federal wiretapping statutes grant standing to the Appellees. Finally, Appellant submits that even if Appellees had standing, they had the burden of proving a violation of the Fourth Amendment or of the wiretap statutes occurred. Appellant argues that Appellees failed to produce any evidence in support of their motions to suppress and motions to dismiss the charges, and that the warrants and the searches should be presumed to have been correct and lawful. We will begin with the initial inquiry as to whether Appellees had standing to request suppression of the security camera videos.

<u>Legal Standing under the Fourth Amendment</u>

**{¶24}** Appellant's first argument is that Appellees had no standing to assert a violation of their Fourth Amendment rights. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In order to challenge a search and seizure as being in violation of Fourth Amendment rights, a defendant must demonstrate that he has standing to raise such a claim by showing that he has a "legitimate expectation of privacy" in the object searched and seized. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see also*, *O'Connor v. Ortega*, 480 U.S. 709, 715, 107 S.Ct. 1492, 97 L.Ed.2d 714 (1987).

**{¶25}** A reasonable expectation of privacy under the Fourth Amendment may extend to businesses and commercial premises as well as to private homes. *See v. City of Seattle*, 387 U.S. 541, 543, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Employees may have some expectation of privacy in their workspace, and therefore, often have standing to assert a Fourth Amendment violation. *Mancusi v. DeForte*, 392 U.S. 364, 369, 88 S.Ct. 2120 (1968). Whether an employee had a reasonable expectation of privacy in order to have standing to object to a search of his or her workplace is decided on a case by case basis. *O'Connor* at 718. In some situations, an independent contractor has less right to object to a search than would an employee, but these situations are also reviewed on a case by case basis. *See, e.g.*, *Donovan v. A.A. Beiro Construction Co. Inc.*, 746 F.2d 894 (D.C. Cir.1984); *Wilson v. Moreau*, 440 F. Supp. 2d 81 (D.R.I. 2006).

**{¶26}** Appellant's argument regarding the dancers' status as independent contractors is not well-taken. Appellant cites no Ohio caselaw that would create a separate Fourth Amendment analysis when the person asserting the right is an independent contractor instead of an employee. Further, the hearing in which the discussion occurred about the dancers' status was apparently held on January 5, 2011, and as we have noted the transcript of that hearing is not in the record. We have no way to know what took place at that hearing and what evidence was presented on the subject. There are documents in the record purportedly signed by some of the dancers indicating that they agreed to be treated as independent contractors. We cannot determine if these documents were properly submitted as

evidence or were relied on by the trial court. Thus, we cannot overturn the trial court's judgment on the basis that the Appellees were independent contractors because that fact is not established in the record before us.

**{¶27}** Appellant contends, though, that even if Appellees had standing under the Fourth Amendment, they also needed to prove that a Fourth Amendment violation took place. More specifically, Appellant argues that Appellees did not meet their burden of proof in challenging evidence seized pursuant to a valid search warrant. Appellant is correct that a search warrant and its supporting affidavits enjoy a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978); *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980); *U.S. v. Ventresca*, 380 U.S. 102, 105-106, 13 L.Ed.2d 684, 85 S.Ct. 741 (1965); *State v. George*, 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989). When a motion to suppress attacks the validity of a search conducted under a warrant, the burden of proof is on the defendant to establish that evidence obtained pursuant to the warrant should be suppressed. *State v. Dennis*, 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997); *State v. Carter*, 2d Dist. No. 2011 CA 11, 2011-Ohio-6700, ¶11.

**{¶28}** Appellant asserts that the Appellees did not submit any evidence to prove their allegations that the search or the warrants were invalid. Hence, the trial court had no basis for granting the motion to suppress. Appellant is correct. The record establishes that Appellees did not submit any evidence and completely relied on alleged facial inadequacies of the search warrants to establish alleged violations of constitutional rights. Thus, if we determine that the warrant is facially valid, there is

no evidence of record provided by Appellees that would allow the trial court to determine the evidence in question should be suppressed and the trial court's decision to do so would be error.

**{¶29}** Appellees claim that the warrant was facially invalid because it was based, in part, on allegedly illegal recordings of conversations made by confidential informants. The fact that a confidential informant was used to record conversations is not a violation of the Fourth Amendment. Both federal and Ohio courts have long permitted the warrantless recording of conversations between a cooperating informant and a defendant. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *State v. Geraldo*, 68 Ohio St.2d 120, 429 N.E.2d 141 (1981). *Geraldo* held that: "Neither the federal constitution nor state law requires the suppression of evidence obtained by the warrantless recording of a telephone conversation between a consenting police informant and a non-consenting defendant." *Id.* at syllabus.

**{¶30}** Appellees asserted that the warrant was silent as to whether the informant consented to wearing a wire and recording the conversations with the Appellees. The record plainly contradicts this assertion. Page three of the affidavit supporting the search warrant at issue in this appeal specifically describes the informant as a "co-operating source."

**{¶31}** Appellees also claim that the warrants were facially invalid because they allowed for the confiscation of security videos that were allegedly made in violation of privacy interests protected by the Fourth Amendment. Appellees'

argument here also fails, because the security videos were recorded by a private entity, *i.e.*, the Cabaret, and not by a state entity or agent of the state. A search or seizure conducted by a private citizen is not a "search or seizure" within the meaning of the Fourth Amendment. *State v. Morris*, 42 Ohio St.2d 307, 316, 329 N.E.2d 85 (1975), citing *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *see also, United States v. Winbush*, 428 F.2d 357 (6th Cir.1970); *State v. Havice*, 7th Dist. No. 1043, 1975 WL 180634. For a search by a private person to trigger Fourth Amendment protection, the government must have known about the search in advance, and the private party must be acting in furtherance of law enforcement purposes. *Morris* at 316-317; *see also*, *United States v. Pierce*, 893 F.2d 669 (5th Cir.1990). There is certainly nothing in the search warrant or accompanying affidavit suggesting that the Cabaret was an agent of the police in producing the security videos. Because the Cabaret is a private entity, Appellees had no basis on which to raise a facial challenge of the search warrant centered on the actions of the Cabaret in creating security videos.

{¶32} Appellees further argue that the search warrant did not allow for the police to actually search through the files on the computer. Appellees submit that the search warrant only allowed the police to seize the computer itself, rather than the files on the computer. Appellees conclude that if the police sought to search the files in the computer, the search warrant failed to satisfy the Fourth Amendment requirement that a warrant "particularly" describe the things to be searched and seized. Pursuant to the Fourth Amendment, only warrants "particularly describing the

place to be searched and the person or things to be seized" may issue. "The manifest purpose of this particularity requirement was to prevent general searches. * * * [T]he requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987).

{¶33} Appellees' argument regarding the search of computer files is baseless. The warrant affidavits refer to the security cameras and the images included on the security camera videos. The warrants describe in detail the computers and the hard drives on the computers, and note that there would be security camera recordings on the computers. The evidence sought in the warrants is stated with sufficient particularity to satisfy the Fourth Amendment.

{¶34} In summary, even assuming Appellees had standing to make a Fourth Amendment challenge, they failed to demonstrate any facial errors in the warrant and they failed to submit any other evidence challenging the warrants or search. Therefore, there was no basis to grant the motion to suppress pursuant to the Fourth Amendment.

<u>Legal Standing under Ohio and Federal Wiretap Statutes</u>

{¶35} Appellees also challenge the state's standing to introduce the computer and video evidence as it may be governed directed by state or federal statutes. The statutes in question are Ohio's wiretapping statute, R.C. 2933.51 et seq., and the federal wiretapping statute, 18 U.S.C. 2510-2522. Ohio's wiretapping statute largely

mirrors the federal statute, and achieving standing under the two codes is substantially similar, hence, we will concentrate our analysis on Ohio's statutory scheme.

**{¶36}** R.C. 2933.52(A) contains the basic prohibition against the interception of wire communications without a warrant:

(A) No person purposely shall do any of the following:

(1) Intercept, attempt to intercept, or procure another person to intercept or attempt to intercept a wire, oral, or electronic communication;

(2) Use, attempt to use, or procure another person to use or attempt to use an interception device to intercept a wire, oral, or electronic communication, if either of the following applies:

(a) The interception device is affixed to, or otherwise transmits a signal through, a wire, cable, satellite, microwave, or other similar method of connection used in wire communications;

(b) The interception device transmits communications by radio, or interferes with the transmission of communications by radio.

(3) Use, or attempt to use, the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic

communication in violation of sections 2933.51 to 2933.66 of the Revised Code.

**{¶37}** Violation of R.C. 2933.52 is a fourth degree felony.

**{¶38}** Police are generally required to obtain an interception warrant in order to intercept communications that are regulated by the wiretap statutes. *See* R.C. 2933.53-56.

**{¶39}** R.C. 2933.63(A) allows an "aggrieved person" to request the suppression of the contents of illegally intercepted wire, oral, or electronic communication:

(A) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this state or of a political subdivision of this state, other than a grand jury, may request the involved court, department, officer, agency, body, or authority, by motion, to suppress the contents, or evidence derived from the contents, of a wire, oral, or electronic communication intercepted pursuant to sections 2933.51 to 2933.66 of the Revised Code for any of the following reasons:

(1) The communication was unlawfully intercepted.

(2) The interception warrant under which the communication was intercepted is insufficient on its face.

(3) The interception was not made in conformity with the interception warrant or an oral order for an interception granted under section 2933.57 of the Revised Code.

(4) The communications are of a privileged character and a special need for their interception is not shown or is inadequate as shown.

**{¶40}** R.C. 2933.51(J) defines an "aggrieved person" as "a person who was a party to an intercepted wire, oral, or electronic communication or a person against whom the interception of the communication was directed." Looking only at this definition, Appellees are arguably "aggrieved persons," because their oral conversations were transmitted electronically to the police by a confidential informant.

**{¶41}** However, Appellees are required to prove more than that they were simply "aggrieved parties" in order to justify the suppression of evidence. They must prove that the interception of the oral conversations was illegal. Appellant once again asserts that the Appellees did not submit any evidence to support their allegations, thus, the trial court had no basis to grant the motion to suppress. We must, again, agree with Appellant.

**{¶42}** As earlier discussed, the burden of proof is generally on the defendant to establish that evidence obtained pursuant to a warrant should be suppressed. *Dennis*, 79 Ohio St.3d at 426; *Carter*, 2d Dist. No. 2011 CA 11, 2011-Ohio-6700, at ¶11. In the specific situation involving suppression of evidence derived from a wiretap, the Ohio Supreme Court has held that "[t]he party seeking to suppress evidence allegedly obtained in violation of R.C. 2933.52(A)(1) bears the burden of

proof on that issue." *State v. Childs*, 88 Ohio St.3d 558, 728 N.E.2d 379 (2000), paragraph two of the syllabus. The record reveals that Appellees put on no evidence of any kind and relied completely on alleged facial inadequacies of the search warrants to attempt to establish a violation of the wiretap statutes.

**{¶43}** Appellees are aware that Ohio's wiretap statute does not apply to "[a] law enforcement officer who intercepts a wire, oral, or electronic communication, if the officer is a party to the communication or if one of the parties to the communication has given prior consent to the interception by the officer[.]" R.C. 2933.52(B)(3). In other words, if the confidential informant was cooperating with the police in the making of the recording, the recording is legal under the wiretap statute. Appellees argue that the warrants did not indicate that the confidential informant was cooperating with the police, and for this reason, that the exception in R.C. 2933.52(B)(3) does not apply. Unfortunately for Appellees, as we have already noted the affidavit supporting the search warrant at issue in this appeal specifically describes the informant as a "co-operating source." Therefore, the warrants have not been shown be to facially invalid for failure to identify a party who consented to the recorded conversation.

**{¶44}** Appellees also believe that the security videos seized under the warrant can be suppressed because they were recorded by the Cabaret in violation of the wiretap statutes. Unlike our earlier analysis under the Fourth Amendment, the fact that the videos were recorded by a private entity rather than the police does not resolve the question of whether the videos should be suppressed pursuant to the

laws regarding wiretaps. R.C. 2933.63(A) allows for the suppression of any unlawfully intercepted wire, oral or electronic communications. The wiretap statutes make it a crime for any person to illegally intercept communications, and the intercepted communication may be suppressed whether or not the police were involved in intercepting the communication or even knew that the communications were unlawfully obtained. Appellees argue that if the police desired to use the Cabaret's security camera footage to obtain evidence of prostitution, they should have obtained a separate and prior warrant to make the recordings in the first instance. Appellees also argue that interception warrants may only be issued to collect evidence regarding certain specific crimes listed in the statute, and misdemeanor prostitution is not one of those crimes.

**{¶45}** Appellees' argument starts with an invalid premise that security camera videos are governed by wiretap statutes. This premise is wrong. Ohio's wiretap statutes, R.C. 2933.51 et seq., and the corresponding federal wiretap laws, 18 U.S.C. 2510-2522, only govern the interception of wire, oral, or electronic communications. The security camera videos were not intercepted wire or electronic communications. They were direct recordings of events that occurred in the Cabaret as they occurred.

**{¶46}** R.C. 2933.51(A) defines "wire communication" as:

an aural transfer that is made in whole or in part through the use of facilities for the transmission of communications by the aid of wires or similar methods of connecting the point of origin of the communication and the point of reception of the communication, including the use of a

method of connecting the point of origin and the point of reception of the communication in a switching station, if the facilities are furnished or operated by a person engaged in providing or operating the facilities for the transmission of communications. "Wire communication" includes an electronic storage of a wire communication.

**{¶47}** R.C. 2933.51(N) defines "electronic communication" as:

a transfer of a sign, signal, writing, image, sound, datum, or intelligence of any nature that is transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system. "Electronic communication" does not mean any of the following:

(1) A wire or oral communication;

(2) A communication made through a tone-only paging device;

(3) A communication from an electronic or mechanical tracking device that permits the tracking of the movement of a person or object.

**{¶48}** A common element of both definitions is that the communication is taking place by means of wires or some other electronic or mechanical device. "Wire communication" and "electronic communication" do not refer to face-to-face communications between two people, but rather, to communications taking place by way of technological assistance.

**{¶49}** According to R.C. 2933.51(C), "intercept" means "the aural or other acquisition of the contents of any wire, oral, or electronic communication through the

use of an interception device." R.C. 2933.51(D) defines "interception device" as "an electronic, mechanical, or other device or apparatus that can be used to intercept a wire, oral, or electronic communication." Thus, the interception of wire or electronic communications requires that there be a wire or electronic communication and a separate and distinct "interception device" that captures the communication. In this case, the video cameras were not intercepting wire or electronic communications. They were simply recording live events.

{¶50} The only part of the wiretap statute that could conceivably apply in this case is the prohibition against capturing oral communication, which is defined in R.C. 2933.51(B) as: "an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation. 'Oral communication' does not include an electronic communication." The security camera videos are solely visual communications and contain no audio component. The wiretap statutes do not prohibit a person from recording events by video alone. Federal caselaw has consistently held that 18 U.S.C. 2510 et seq. does not apply to purely video surveillance recordings. "Defendant also claims that the videotaped surveillance of him violates Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20. However, Title III has no application to video surveillance. *United States v. Torres*, 751 F.2d 875, 880-82 (7th Cir.1984)." *U.S. v. Westberry*, 221 F.3d 1337 (6th Cir.2000); *see also, U.S. v. Koyomejian*, 970 F.2d 536 (9th Cir.1992); *U.S. v. Falls*, 34 F.3d 674 (8th Cir.1994). Ohio's wiretap statute mirrors the federal statute, and

there is no reason to interpret our state statute differently than the federal statute with respect to this matter. "Neither the federal nor Ohio statutes makes any reference to videotaping[.]" Katz, Martin, Lipton & Crocker, *Baldwin's Ohio Practice Criminal Law*, Section 22:4 (3d Ed.2012).

**{¶51}** Since it is clear that the computers and surveillance videos were seized pursuant to a warrant, and in light of the fact that Appellees failed to meet their burden of proof to challenge the seized evidence, the trial court had no basis on which to suppress the videos. Appellant's second assignment of error has merit and the decision of the trial court to suppress the videos is reversed.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS BEFORE THE CLOSE OF THE STATE'S CASE, BECAUSE THE TRIAL COURT EXAMINED EVIDENCE BEYOND THE FACE OF THE COMPLAINTS WHEN IT CONCLUDED THAT DEFENDANTS DID NOT ENGAGE IN SEXUAL ACTIVITY AS DEFINED BY THE OHIO REVISED CODE.

**{¶52}** This assignment of error deals with the trial court's decision to dismiss the prostitution charges. As previously noted, a trial court has the authority to dismiss criminal charges prior to trial either on motion of the defendant or *sua sponte*. Crim.R. 48; *Busch*, *supra*, at 616. A defendant may request dismissal of charges prior to trial based on defects in institution of the prosecution or defects in the complaint. Crim.R. 12(C). The pre-trial dismissal of a criminal complaint or

indictment is reviewed for abuse of discretion. *State v. Steele,* 8th Dist. No. 85076, 2005-Ohio-2623.

**{¶53}** Appellant argues that the trial court went beyond the scope of a pre-trial motion to dismiss when it considered and rejected the state's evidence of prostitution contained on the videos. Generally, a pre-trial motion to dismiss a criminal complaint tests the sufficiency of the complaint without regard to the quality or quantity of evidence that may be produced by either the state or the defendant at trial. *State v. O'Neal,* 114 Ohio App.3d 335, 336, 683 N.E.2d 105 (1996). When the motion to dismiss requires the court to weigh the evidence that will be submitted at trial, the motion must be framed as a Crim.R 29(A) motion for acquittal at the close of the state's case, and generally cannot be resolved prior to trial. *State v. Varner,* 81 Ohio App.3d 85, 610 N.E.2d 476 (1991). In this case, the trial court viewed the evidence in question and made its decision based on its interpretation of the evidence. These actions go far beyond the scope of a typical pre-trial motion to dismiss.

**{¶54}** In this appeal, though, we are not dealing with a typical pre-trial motion to dismiss. Appellees argued, in part, that their constitutional rights were violated because the private dances performed by the Appellees were a form of expression protected as free speech under the First Amendment. Appellees argued that this First Amendment issue was litigated in the United States District Court for the Northern District of Ohio in the case of *J.L. Spoons, Inc. v. Morsel,* N.D.Ohio Nos. 1:98-CV-02857, 1:04-CV-00314, 2007 WL 14581 (Jan. 3, 2007). Appellees argued that the *J.L. Spoons* case resulted in a federal injunction that was in effect at the time

Appellees allegedly committed their crimes, and that this injunction protected them from being charged with prostitution based on dances they performed at the Cabaret.

{¶55} It is beyond doubt that "[n]ude dancing is a form of expressive conduct protected by the First Amendment." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 298 (6th Cir.2008); *Deja Vu of Nashville, Inc. v. Metro. Govt. of Nashville and Davidson Cty.*, 274 F.3d 377, 391 (6th Cir.2001); see also *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (plurality opinion). Whether or not Appellees were simply engaging in nude dancing rather than prostitution is a factual question that goes to the very heart of the charges, and this issue would be the subject matter of the trial on the merits rather than a pre-trial motion to dismiss. Appellees' argument for dismissal, though, raises the possibility that the Appellees could not be prosecuted at all for prostitution because of a federal injunction. It is certainly possible that an injunction could be enforced prior to trial on the merits. In the instant appeal, the injunction in question might form a valid reason for dismissal of the prostitution charges when we delve into Appellees' argument regarding the injunction.

{¶56} The *J.L. Spoons* case involved the enforcement of Ohio Liquor Control Commission regulations that prohibited liquor permit holders from allowing employees from appearing in the nude or engaging in sexual activity, including "sexual contact" as defined by R.C. 2907.01 (touching of the thigh, genitals, buttock, pubic region, or breast). This is the same definition of "sexual contact" used in the prostitution statute, R.C. 2907.25. The federal district court in *J.L. Spoons* issued an

injunction against the enforcement of a number of liquor control regulations on the grounds that the activity being regulated, *i.e.*, nude dancing, was protected by the "freedom of speech" provision of the First Amendment and that the regulations were overly broad. Appellees argue that the federal injunction effectively prohibited the state from prosecuting them for prostitution for engaging in the same type of "sexual contact" that was at issue in the federal cases.

{¶57} In the instant cases, there was considerable dispute as to whether the *J.L. Spoons* injunction was still in effect on the days that Appellees were accused of committing prostitution in April and May of 2009. The confusion arose because the district court case was ultimately overturned by the Sixth Circuit Court of Appeals on August 15, 2008, but the injunctions were not immediately lifted after that reversal. *See J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 381 (6th Cir.2008). We will assume, arguendo, that the injunction was in effect in April and May of 2009 for purposes of this appeal. This is the time period in which Appellees' prostitution charges arose.

{¶58} Appellees contend that the *J.L. Spoons* injunction applied to more than violations of liquor control regulations, and was generally applicable to the enforcement of any law relying on the definition of "sexual contact" as defined by R.C. 2907.01. We must disagree with Appellees. It is evident from the holding of *J.L. Spoons* that the injunction deals only with the enforcement of very specific Ohio administrative code sections, as demonstrated by the concluding paragraphs of the district court case:

For the foregoing reasons, and for the reasons stated in the preliminary injunction order, the court:

(1) converts the preliminary injunction into a permanent injunction;

(2) declares the following portions of Ohio Administrative Code § 4301:1-1-52 unconstitutional: §§ (A)(2), (B)(2), and (B)(3);

(3) permanently enjoins the enforcement of §§ (A)(2), (B)(2), and (B)(3) anywhere in the state of Ohio; and

(4) enters final judgment in favor of the plaintiffs.

*Id.* at *3.

**{¶59}** Nothing in *J.L. Spoons* enjoins the state from enforcing prostitution statutes against dancers at strip clubs. Liquor control laws and prostitution laws are enforced under their own separate code sections. Appellees were charged with prostitution as proscribed in R.C. 2907.25(A), and not with violations of liquor control regulations. There is certainly no reason for us to consider broadening the injunction issued by the district court in *J.L. Spoons*, especially when that case has already been overturned by the Sixth Circuit. At any rate, even if the *J.L. Spoons* injunction had some relevance to the prostitution charges in the instant appeal, it would not have required the trial judge to examine the evidence in this case. The trial court's analysis would have been limited to the question of whether the Appellees could be charged with a violation of R.C. 2907.25(A) in light of the federal injunction. Thus, we agree with Appellant that the trial court improperly examined evidence in resolving

Appellees' motion to dismiss, and for this reason, the dismissal must be reversed and the charges reinstated.

Conclusion

{¶60} Appellant raised three main arguments in this appeal. The first argument is that some of the Appellees at the Cabaret failed to file written motions to suppress and dismiss, and that the trial court had no basis for granting such motions in their favor. This argument is contradicted by the record in which defense counsel raised oral motions in favor of all the Appellees, and the state and trial judge agreed that no more hearings were necessary and that the court's ruling would apply to all of the Appellees. Appellant's second argument is that the Appellees were independent contractors who had no standing to object to the search warrants, and even if they had standing, they produced no evidence to rebut the presumption that the search warrants were valid. Although Appellant's argument regarding the status of Appellees as independent contractors instead of employees is not supported by the record, we agree that Appellees had the burden of proof in the suppression hearing and that they failed to produce any evidence to challenge the search warrants or evidence seized pursuant to the warrants. Appellees attempted to present a number of facial challenges to the warrants, but none of those challenges have merit. The warrants are presumptively valid, and Appellees provided no evidence to overcome this presumption. Therefore, the trial court had no basis for granting the motions to suppress, and the court's ruling is reversed. Appellant's third argument is that the trial court went beyond the scope of a pre-trial motion to dismiss by viewing and

evaluating the evidence that formed the basis of the state's case. Appellant is correct, and the trial court's dismissal is vacated. Appellant's second and third assignments of error have merit. The trial court's orders granting the motions to suppress are reversed, and the orders granting the motions to dismiss are vacated in the case of all 19 Appellees. The misdemeanor prostitution charges that had been dismissed are hereby reinstated in all 19 cases on appeal.

Vukovich, J., concurs.

Celebrezze, Jr., J., concurs.