[Cite as *State v. Land*, 2014-Ohio-1877.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,              CASE NO.  9-13-39

      v.

DURAIN J. LAND,                        O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marion  County Common Pleas Court
Trial Court No. 13-CR-0223

**Judgment Reversed and Cause Remanded**

Date of Decision:   May 5, 2014

APPEARANCES:

    *Kevin P. Collins* for Appellee

    *Denise M. Martin*  for Appellant

**ROGERS, J.**

{¶1} Plaintiff-Appellant, the State of Ohio, appeals the judgment of the Court of Common Pleas of Marion County, suppressing the State's evidence. On appeal, the State argues that the trial court erred by: (1) holding a suppression hearing after the commencement of trial without the defendant filing a motion to suppress; (2) denying the State due process; and (3) improperly suppressing the State's evidence. For the reasons that follow, we reverse the trial court's judgment.

{¶2} On May 9, 2013, the Marion County Grand Jury returned a one count indictment against Land charging him with one count of possession of heroin in violation of R.C. 2925.11(A)/(C)(6), a felony of the fourth degree.

{¶3} This matter proceeded to trial on August 8, 2013. Land and his trial counsel had discussed filing a motion to suppress the heroin that was found on Land's person, but decided against it as part of their trial strategy. Trial Tr., p. 96. The State called two witnesses, Trooper Ruth and Detective Isom, both of whom described how they came into contact with Land after pulling over the vehicle he was a passenger in for a traffic violation.

{¶4} Detective Isom testified that when Land stepped out of the vehicle, he could see a plastic bag, which he believed contained narcotics, hanging out of Land's pants. Detective Isom testified at first he tried to shake Land's pants in an

attempt to get the narcotics to fall to the ground, but was unsuccessful. Eventually, Land removed the bag from his pants after Detective Isom asked him "do you want to get it or do you want me to get it[?]" *Id.* at p. 91.

{¶5} After Detective Isom finished testifying, the trial court excused the jury and sua sponte held a suppression hearing to determine "whether a motion to suppress should have been filed and whether that motion [sic] should have been suppressed." *Id.* at p. 97. The State and the trial court then had the following relevant discussion:

> State: I can't get past the fact, I guess, that we're at the trial now and we're discussing, you know, the suppression issues and I think I need to look into that as well.
>
> Trial Court: Okay. If the defense is that -- let's say the facts are that it was an unconstitutional search, however it's admitted because defense counsel didn't file a motion to suppress, that would be ineffective assistance of counsel and we're back to the same place, the conviction then becomes nullified.
>
> State: Would that be an issue that he would address on appeal?
>
> Trial Court: Well, if it's unconstitutional, I'm not supposed to cover my eyes to that. I'm supposed to make that ruling myself. I'm not supposed to just cover my eyes and say, we'll let the Court of Appeals deal with that.
>
> State: I would ask for a recess, Your Honor, in order for us to look fully into this issue.
>
> Trial Court: How long of a recess do you need?
>
> State: Well, I'm going to need to do a little research, so, I don't know, maybe an hour or two.

Trial Court: Well, I don't want to recess this for an hour.

*Id*. at p. 102-103.

{¶6} The trial court then took a short recess. When back on the record, the State again informed the court that it was not prepared to defend a motion to suppress at that time. The State requested additional time to research the suppression issue. The trial court then stated, "I would think before you present evidence in Court you would make an evaluation regarding the constitutionality of the recovery of evidence." *Id*. at p. 106.

{¶7} At this point in the hearing, Land's trial counsel started offering additional reasons why he did not file a motion to suppress:

> Defense Counsel: I had -- I had contacted [the State] sometime last week, Thursday possibly, about the DVD of this, so I got it Friday.
>
> Trial Court: You hadn't seen the DVD before Friday?
>
> Defense Counsel: No, I got it Friday, I didn't know it existed.
>
> Trial Court: Okay. Why is that?
>
> The State: I wasn't aware that there was a DVD. It was not turned in with our original package. I didn't note it in the report and Doug did bring it to my attention. whether [sic] it was last Friday, I can't say for certain, but he was provided with a copy of it.
>
> Defense Counsel: Because Officer's Isom's testimony of, are you going to get it or am I going to get it, that's the first time I heard that. It's not in any other report. I was provided a report by Detective Isom yesterday at 11:55 [a.m.]. [The State] emailed this to me and that was the first time where there was comment [sic] made that my

client was the one that reached into his own pants and removed the items from his pants. So in part that's why I had not filed a motion to suppress, and I didn't file it earlier based on the other information. I had Trooper Ruth's report and such. That's some of the reasons why I did what I did.

*Id.* at p. 107-108.

{¶8} The trial court, before allowing either party to present evidence at the suppression hearing, offered its opinion on why the evidence was not admissible:

Plain view doesn't give you the right to go make an intrusion, and here's a case that's very helpful on this. It's just a Court of Appeals case. It's <u>State v. Davis, 133 Ohio App.3d 114.</u> [Sic] Officers observed, I think, marijuana plants, they could see those from the sidewalk, so that officers [sic] had a right to be there. They could see those inside the house through the window of the house, so they were in plain view, I mean, because the officers could observe them and the officers were in a place where they had a right to be. However, that didn't give them grounds to enter the house because the plain view doctrine does not give you grounds to go make an intrusion.

Now, the facts here are a little unusual because you have an item that was, at least a portion of it, was in plain view. Although in some of the plain view cases you have where someone – you see a stereo and the plain view doctrine doesn't give them authority to lift up the stereo to look at the serial number to then determine it's stolen property. If they can see the stereo, if they can see the serial number without moving the stereo, then that's okay, but they can't lift it up, even though that's a very minimal additional intrusion. So I don't think plain view works here.

I don't think consent works because, I mean, we've got multiple officers there. He's been stopped by force. They've already tried to shake his pants, which wasn't something he consented to. He never was asked for consent. He just said, well, are you going to give them up or am I going to have to go in and get them, that's really telling him he doesn't have a choice. So I don't think consent works.

> I don't think search incident to arrest works because there wasn't an arrest made.  I think Knowles v. Iowa addresses that issue.
> * * *
> And I don't think exigent circumstances works because the officer was asked about do -- well, were you worried about the drugs getting lost or destroyed, is that why you needed to get those right away, he said, well, we prefer to get them rather than to have to go prepare a warrant and look for a judge.  That's not exigent circumstances either.

*Id*. at p. 108-111.

{¶9} After explaining why none of the warrant exceptions applied to Land's case, the trial court told the State it could offer evidence on the motion to suppress after another short recess.  When back on the record, the State called Detective Isom to testify.  Detective Isom testified that when Land exited the vehicle, he saw part of a plastic bag sticking out from Land's pants.  He also stated that it is common for individuals to hide narcotics in their pants.  Detective Isom tried to grab the plastic bag but was not able to because the plastic bag fell further into Land's boxer shorts.  After his failed attempt to retrieve the drugs, Detective Isom asked Land "if he was going to remove it or [if] he wanted me to remove it." *Id.* at p. 129.  Detective Isom testified that Land said that he would get it and that he never told him "no." *Id.* at p. 130.  Detective Isom also testified, "I think at the point that he knew that I had seen it and that I had asked him that he knew he was busted and he was complying, he gave it to me." *Id.*

{¶10} On cross-examination, Detective Isom stated that Land was not in handcuffs at the time he handed over the narcotics. The trial court then asked Detective Isom the following questions:

Trial Court: -- and then you said you proceeded, you grabbed [Land's] clothes and shook them.

Detective Isom: I grabbed them and -- well, I don't know about shaking, but I think on the video you can see I kind of (Indicating).

Trial Court: Did you ask him before you did that?

Detective Isom: Did I ask him what?

Trial Court: Whether you could shake his clothes, pull his clothes, do any of that?

Detective Isom: No.

* * *

Trial Court: And you have how many officers present?

* * *

Detective Isom: Myself, Trooper Ruth, Detective Utley, and I think Detective Troutman, and I'm not quite sure when Detective Elliott got there, at what point.

* * *

Trial Court: And do you think -- I mean, do you think that [Land] felt he had any choice at the point?

Detective Isom: To say no?

Trial Court: Yes.

Detective Isom: Sure he did.

Trial Court: And why do you say that?

Detective Isom: Because I asked him.

Trial Court: Well, you asked him. You know, officers ask a lot of questions, but normally you ask with the intent that the person comply. Like, you know, you stop someone, you ask them for their driver's license. It's not really a question, per se, is it? It's more of a direction; isn't that correct?

Detective Isom: I really don't know what you're getting at, but I'm not sure --

Trial Court: And this was a much more intense situation than just a traffic stop at that point. I mean, you're there with multiple drug officers because you think you've found drugs at this point.

*Id.* at p. 131-135.

{¶11} The trial court then orally made its decision. The trial court stated that it considered Detective Isom's testimony at trial in addition to his testimony at the suppression hearing and found that the evidence was unconstitutionally obtained and granted the motion to suppress it had raised sua sponte. The State then moved for a stay of the proceedings so it could appeal the trial court's judgment to this court.

{¶12} The State filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE COURT ABUSED ITS DISCRETION WHEN IT IMPROPERLY SUPPRESSED THE STATE'S EVIDENCE SUA SPONTE AFTER THE COMMENCEMENT OF TRIAL AND WITHOUT ANY MOTION TO SUPPRESS BEFORE THE COURT.**

*Assignment of Error No. II*

**THE STATE WAS DENIED DUE PROCESS WHEN THE COURT SUA SPONTE HELD A SUPPRESSION HEARING TO SUPPRESS THE STATE'S EVIDENCE.**

*Assignment of Error No. III*

**THE COURT IMPROPERLY SUPPRESSED THE EVIDENCE.**

*Assignment of Error No. I*

{**¶13**} In its first assignment of error, the State argues that the trial court abused its discretion by improperly suppressing the State's evidence when it sua sponte conducted a suppression hearing after the commencement of the trial and without any motion to suppress before the court. We agree.

{**¶14**} Initially, we must note "[i]n our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243-245 (2008). This is because the "parties know what is best for them, and are responsible for advancing the facts

-9-

and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment).

{¶15} Pursuant to Crim.R. 12(D), a motion to suppress must be filed within 35 days of arraignment "or seven days before trial, whichever is earlier." However, in the interest of justice, the trial court has the discretion to extend the time for making pretrial motions. Crim.R. 12(D). Further, Crim.R. 12(H) states that the failure of the defendant to raise defenses prior to trial "shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver." While the trial court correctly noted in its judgment entry that the trial court may extend the time for making a motion to suppress, Land never made a written or an oral motion to suppress.

{¶16} "A trial court cannot *sua sponte* issue and then grant a motion to suppress." (Emphasis sic.) *State v. Wallace*, 7th Dist. Mahoning Nos. 11 MA 137-145, 11 MA 149-155, 11 MA 146, 11 MA 147, 11 MA 148, 2012-Ohio-6270, ¶ 19, citing *State v. Hamilton*, 97 Ohio App.3d 648 (3d Dist.1994). Further, it is an abuse of discretion for a court to override a party's deliberate waiver of a defense. *See Day v. McDonough*, 547 U.S 198, 202 (2006) ("And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense.").

{¶17} Here, it is undisputed that Land's trial counsel never filed a written motion to suppress. Initially, the trial court asked Land's trial counsel why he had not filed a motion to suppress, and his trial counsel responded that he had talked to Land, and together, they agreed it was in Land's best interest not to file the motion. The trial court essentially called Land's trial counsel ineffective and overrode Land's waiver of his defense. Instead of removing Land's "ineffective" trial counsel, it proceeded to argue Land's case on his behalf:

> Plain view doesn't give you the right to go make an intrusion, and here's a case that's very helpful on this. It's just a Court of Appeals case. It's <u>State v. Davis, 133 Ohio App.3d 114.</u> [Sic] Officers observed, I think, marijuana plants, they could see those from the sidewalk, so that officers [sic] had a right to be there. They could see those inside the house through the window of the house, so they were in plain view, I mean, because the officers could observe them and the officers were in a place where they had a right to be. However, that didn't give them grounds to enter the house because the plain view doctrine does not give you grounds to go make an intrusion. * * * *So I don't think plain view works here.*
>
> *I don't think consent works* because, I mean, we've got multiple officers there. He's been stopped by force. They've already tried to shake his pants, which wasn't something he consented to. He never was asked for consent. He just said, well, are you going to give them up or am I going to have to go in and get them, that's really telling him he doesn't have a choice. *So I don't think consent works.*
>
> *I don't think search incident to arrest works* because there wasn't an arrest made. I think <u>Knowles v. Iowa</u> addresses that issue. * * *
>
> *And I don't think exigent circumstances works* because the officer was asked about do -- well, were you worried about the drugs getting lost or destroyed, is that why you needed to get those right away, he said, well, we prefer to get them rather than to have to go prepare a warrant and look for a judge. *That's not exigent circumstances either.*

(Emphasis added.) Trial Tr., p. 108-111.

{¶18} Even at this point, when the trial court indicated that it was inclined to suppress the evidence, Land did not orally move to suppress the evidence or ask the trial court for relief from his waiver pursuant to Crim.R. 12(H). Further, after the trial court explained why it believed none of the warrant exceptions applied, it then allowed the State and Land to present evidence at the suppression hearing.

{¶19} Based on the facts of this case, we find that the trial court abused its discretion in first sua sponte raising the motion to suppress in contradiction to Land's trial strategy and then taking an adversarial position by essentially ruling on the motion before allowing the State or Land to present any evidence on the matter.

{¶20} Accordingly, we sustain the State's first assignment of error.

*Assignment of Error No. II*

{¶21} In its second assignment of error, the State argues that the trial court erred in conducting a suppression hearing without giving it notice and opportunity to respond to the newly raised issue. We agree.

{¶22} It is well-established that if a trial court raises an issue sua sponte it must afford both parties notice and an opportunity to prepare a response to the newly raised issue. *See McDonough*, 547 U.S. at 210 ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity

-12-

to present their positions."); *see generally State ex rel. Edwards v. Toledo City School Dist. Bd. Of Edn.*, 72 Ohio St.3d 106 (1995); *see also Jones v. Alvarez*, 12th Dist. Butler No. CA2006-10-257, 2008-Ohio-1994, ¶ 29 ("The trial court's decision to raise, sua sponte, the issue of mutual mistake and to decide that issue without giving Alvarez an opportunity to present evidence and argument on the issue was unreasonable and, therefore, an abuse of discretion."); *N. Olmstead Auto Paint & Supply Co. v. Lettieri*, 9th Dist. Lorain No. 91CA005211, 1992 WL 174637, *3 (July 22, 1992) ("We find that the trial court erred by raising the defense *sua sponte*, and determining the action upon that issue, without first providing notice to the parties and an opportunity to respond."); *Bishop Kandel Realty v. Meadows*, 3d Dist. Hancock No. 5-91-9, 1991 WL 234135, *3 (trial court erred in sua sponte raising an affirmative defense without first giving appellant an opportunity to respond).

{¶23} In this matter, the trial court did not allow the State time to respond to the newly raised issue of suppression. While the court allowed for two short recesses, it denied the State's request for an hour-long recess or a continuance so it could properly research the issue of suppression. The trial court stated that the State should have made "an evaluation regarding the constitutionality of the recovery of the evidence" before it had gone to trial. Trial Tr., p. 106-107. However, the Ohio Supreme Court has held that "the prosecutor cannot be

expected to anticipate the specific legal and factual grounds upon which the defendant challenges the legality of a warrantless search." *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). Further, the defendant's failure to timely object to the illegality of the acquired evidence will lead the prosecutor to "believe that the defendant has no objection to such illegally acquired evidence. As a result, the prosecutor may reasonably rely upon such evidence as sufficient to establish [the] defendant's guilt * * *." *State v. Davis*, 1 Ohio St.2d 28, 31 (1964).

{¶24} While the trial court allowed two short recesses, this did not afford either party adequate time to prepare arguments and present their positions concerning a complex constitutional issue that a motion to suppress presents. As such, we find that the trial court erred in denying the State time to adequately defend against the trial court's motion to suppress.

{¶25} Accordingly, we sustain the State's second assignment of error.

*Assignment of Error No. III*

{¶26} In its third assignment of error, the State argues that the trial court erred in suppressing its evidence. Since we have held that the trial court erred not only by conducting a suppression hearing but also in denying the State adequate opportunity to defend against the motion to suppress, reviewing the improper suppression hearing on the merits would be imprudent. Further, our resolution of

the State's first and second assignments of error renders its third assignment of error moot. Consequently, we decline to address it. App.R. 12(A)(1)(c).

{¶27} Having found error prejudicial to the State in the first and second assignments of error, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

***Judgment Reversed and***
***Cause Remanded***

**WILLAMOWSKI, P.J. concurs.**
**PRESTON, J., concurs in Judgment Only.**

**/jlr**