THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARK C. RUSH III, Defendant-Appellee.

Second District   No. 2—00—0105

Opinion filed March 2, 2001.

Douglas P. Floski, State's Attorney, of Oregon (Martin P. Moltz and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert T. Hanson, of Moehle, Smith, Nieman, Hanson & Hahn, P.C., of Oregon, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Defendant, Mark C. Rush III, was arrested and charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11—501(a)(2) (West 1998)) and driving with an alcohol concentration of 0.08 or more (625 ILCS 5/11—501(a)(1) (West 1998)). In addition, he was given notice that his driving privileges would be summarily suspended. See 625 ILCS 5/11—501.1 (West 1998). He moved to suppress the State's evidence, arguing that he was stopped and arrested in violation of the fourth amendment (U.S. Const., amend. IV). He also petitioned to rescind the summary suspension, contending that the arresting officer lacked "reasonable grounds" to believe that he was driving under the influence of alcohol. See 625 ILCS 5/2—118.1(b) (West 1998). The trial court granted both the motion and the petition, and the State appeals, asserting that the stop and arrest were valid. We reverse and remand.

Following a traffic stop, Brian Ketter, an Ogle County deputy sheriff, arrested defendant for DUI. He ticketed defendant for DUI, transporting alcohol illegally (625 ILCS 5/11—502(a) (West 1998)), and driving in the wrong lane (625 ILCS 5/11—701(a) (West 1998)). Defendant submitted to a chemical test that revealed an alcohol concentration of 0.11. As a result, he received the notice of summary suspension. Ketter stated on the notice that he had "reasonable grounds" to arrest defendant for DUI. Ketter explained:

"Rush was observed crossing center line once and fog line once. Rush had bloodshot eyes, slurred speech, strong odor of alcohol and admitted consuming alcohol. Rush failed all field sobriety tests."

At a hearing, the trial court first took up defendant's motion to suppress. Defendant testified that, on October 24, 1999, about 1:30 a.m., he was driving alone in his Dodge pickup truck. He noticed that a vehicle was following him "very closely." The vehicle "made [him] a little nervous so [he] kept an eye on it." After following him for about 4¹/₂ miles, the vehicle activated its emergency lights, revealing that it was a police car. Defendant pulled over and was ultimately arrested. He never saw a warrant for his arrest.

On cross-examination, defendant testified that he admitted to the officer that he had consumed "five to six beers" since the previous evening. He added later that he had consumed "a couple" of beers with his dinner. Defendant did not believe that he had committed any traffic violation.

The court found that the burden on the motion had shifted to the State. The State called Ketter, who testified as follows. On October 24, he was driving his vehicle behind a Dodge. He saw the Dodge "cross the yellow center line twice" and "cross the white fog line." He stopped the Dodge and spoke with defendant, the driver and sole occupant of the vehicle. Ketter told defendant why he had stopped him. Ketter noticed that defendant "had slurred speech" and emitted "a strong odor of alcohol." Defendant admitted that he had consumed "five to six beers" since the previous evening. Defendant also said that "an open can of beer" was "on the passenger's seat."

Ketter asked defendant to exit the vehicle so that he could perform some field sobriety tests. Defendant complied, telling Ketter that no disabilities prevented him from standing, walking, or counting. Ketter directed defendant to a "nice, level area," where he performed the tests.

First, Ketter asked defendant to put his arms at his sides, stand on one leg, and count to 30. Ketter demonstrated the test, and defendant said that he understood. Because defendant "raised his arms" and "dropped his foot to the ground five *** times," he failed the test.

Second, Ketter asked defendant to take nine steps, heel to toe, back and forth along the white fog line. Ketter demonstrated the test, and defendant had no questions. Because defendant stepped off the line "several times," failed "to touch heel to toe," and "raised his hands" for balance, he failed the test.

Third, Ketter asked defendant to close his eyes, tip his head back, and touch his nose with a finger on each hand. Although defendant's movements were "slow and deliberate," he passed the test.

Fourth, Ketter administered a horizontal gaze nystagmus (HGN) test. He noticed that, as defendant's eyes were following a pen, they "did not follow the pen smoothly back and forth, they were jerking." Defendant also "had an onset of nystagmus prior to 45 degrees."

Finally, Ketter administered a portable breath test (PBT), which indicated an alcohol level of 0.07. Based on his tests, Ketter believed that defendant was under the influence of alcohol. Defendant then told Ketter that he had consumed "seven or eight beers" since the previous afternoon.

On cross-examination, Ketter testified that he followed defendant's vehicle for about four miles. He was "three to four car lengths" behind defendant's vehicle. Defendant did not exceed the speed limit, disregard any traffic control devices, or impede any other vehicles. Ketter acknowledged that, on the notice of summary suspension, he wrote that defendant had crossed the center line only once. Ketter maintained that defendant actually crossed it twice.

After Ketter followed defendant for about two miles, defendant's left tires crossed the center line entirely "for a matter of seconds." Next, his right tires "rode the white fog line for a matter of several seconds." Finally, less than a minute after he first crossed the center line, his left tires "touched and rode the center line." Ketter effected the stop because he believed that defendant may have been intoxicated. When Ketter activated his emergency lights, defendant pulled over promptly and properly.

Ketter asked defendant for his driver's license, which he produced without difficulty. Ketter did not ask defendant to count backward from 80 to 60 while still in the vehicle. Defendant exited the vehicle without difficulty. His clothes were not disheveled. His speech, though slurred, was understandable. On the walk-and-turn test, he timely started and stopped, he took the required number of steps, and he made a proper turn. Because defendant passed the finger-to-nose test, Ketter erred in writing on the notice of summary suspension that defendant had failed all the tests. In general, defendant's balance was good, and he was very cooperative.

In rebuttal, defendant testified that he did not cross any line or commit any traffic violation. Nevertheless, when Ketter stopped him, Ketter told him that he had crossed the lines. Ketter did ask him to count backward from 80 to 60, and defendant complied without difficulty. Defendant was not athletic or coordinated and was unable to stand on one leg for 30 seconds. However, on the walk-and-turn test, he stayed on the line and walked heel to toe.

After arguing the motion to suppress, the parties stipulated that the evidence on the petition to rescind would be the same. In a written order, the trial court stated as follows:

"1. That the Defendant *** was stopped *** and the officer did not have an arrest warrant ***.

2. The officer testified that *** the Defendant crossed the center-line twice and the fog line once and in the officer's warning to motorist wrote that the Defendant crossed the center line once and the fog line once.

3. The officer did not indicate any other erratic driving and did not indicate any weaving by the Defendant other than the momentary crossing of the center line.

IT IS THEREFORE ORDERED that the Defendant's Motion to *** Suppress Evidence is granted and the Defendant's Petition to Rescind Statutory Summary Suspension is granted for no reasonable grounds."

The State appealed.

Initially, we note that defendant's motion and petition raised overlapping issues. In his motion to suppress, defendant argued that Ketter lacked reasonable suspicion to stop him and probable cause to arrest him. In his petition to rescind, he claimed that Ketter lacked "reasonable grounds" to arrest him. See 625 ILCS 5/2—118.1(b) (West 1998). In this context, "reasonable grounds" is synonymous with "probable cause." *People v. Fortney*, 297 Ill. App. 3d 79, 87 (1998). Therefore, as the trial court did, we shall consider the motion and the petition together.

■ In general, a ruling on a motion to suppress or a petition to rescind will be reversed only if it is manifestly erroneous. *People v. Scott*, 249 Ill. App. 3d 597, 601 (1993). However, because defendant's motion and petition turned on questions of reasonable suspicion and probable cause, we must apply a different standard of review. In *Ornelas v. United States*, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996), the Supreme Court stated:

"[D]eterminations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *** [However,] a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663.

See *People v. Wardlow*, 183 Ill. 2d 306, 311 (1998), *rev'd on other grounds*, 528 U.S. 119, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000) (following *Ornelas*).

Thus our review will consist of two steps. First, we will reverse the trial court's factual findings only if they are against the manifest weight of the evidence. Second, we will review *de novo* the ultimate questions whether reasonable suspicion justified the stop and whether

probable cause (or "reasonable grounds") justified the arrest. See *In re G.O.*, 191 Ill. 2d 37, 50 (2000) (applying *Ornelas* to ultimate question whether confession was voluntary).

Although the trial court's ruling was terse and did not set forth specific findings of fact, it clearly was based on the determination that "the momentary crossing of the center line" was insufficient to support the stop. Therefore, we surmise that the court must have believed Deputy Ketter, at least to the extent necessary to find that the officer observed defendant cross the center line and the fog line. Because that finding is not against the manifest weight of the evidence, we must determine whether that "momentary crossing" supported the stop.

■ A traffic stop requires reasonable suspicion that the vehicle or an occupant is subject to seizure for a violation of law. *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401 (1979); *People v. Brodack*, 296 Ill. App. 3d 71, 74 (1998). Reasonable suspicion must be based on specific and articulable facts; a mere hunch is insufficient. *Brodack*, 296 Ill. App. 3d at 74. Here we point out that the language in the trial court's ruling suggests that it found "no reasonable grounds" for the stop. If that was the court's conclusion, the court invoked the wrong standard. Again, "reasonable grounds" means "probable cause," and a stop requires not probable cause but only reasonable suspicion. We note that even the appellate court has confused "reasonable grounds" with "reasonable suspicion." See, *e.g.*, *People v. Decker*, 181 Ill. App. 3d 427, 430 (1989) (affirming ruling that there were no "reasonable grounds for a stop"). In this context, however, the terms are distinctly different.

Districts of the appellate court have split over whether reasonable suspicion may stem from a defendant's brief crossing of the center line. The Third District has at least implied that a "nonhazardous, momentary crossing of the center line," standing alone, does not support a valid stop. *Decker*, 181 Ill. App. 3d at 430; see also *People v. Faletti*, 215 Ill. App. 3d 61, 64 (1991) (a "single, momentary crossing of the center line, without more, does not necessarily provide a sufficient basis for an investigatory stop"); *People v. Collins*, 154 Ill. App. 3d 149, 151 (1987) (stop invalid where "defendant gave an unrefuted, reasonable explanation for his safe usage of the oncoming lane"). ·

This court, however, has disagreed. In *Village of Lincolnshire v. DiSpirito*, 195 Ill. App. 3d 859, 864 (1990), the defendant "cross[ed] over the center line for a brief moment." An officer stopped him and ultimately arrested him for DUI. The defendant moved to suppress the State's evidence, arguing that the stop was invalid. The trial court denied the motion, the defendant was convicted of DUI, and he appealed.

We noted that, in general, a driver is required by law to stay to the right of the center line. See 625 ILCS 5/11—701(a) (West 1998). The law contains some exceptions, however, and the defendant claimed that he legally made a nonhazardous crossing to avoid an obstruction. See 625 ILCS 5/11—701(a) (West 1998). Nevertheless, the officer did not see any obstruction, and the validity of a stop depends only on the facts that are available to the officer. Because the officer "merely saw the defendant's car drive out of the proper lane," his knowledge "provided [him] with sufficiently specific and articulable facts from which a reasonable person might conclude that a law was being broken." *DiSpirito*, 195 Ill. App. 3d at 864. On that basis, we validated the stop.

■ Thus, contrary to the Third District's implication, a driver's single, momentary crossing of the center line, without more, is a sufficient basis for a stop. The stop is invalid only if the officer knows *additional* facts that make it reasonably apparent that the crossing is legal. See also *People v. Gerwick*, 235 Ill. App. 3d 691, 696 (1992) (Fourth District follows *DiSpirito*); *People v. Goestenkors*, 278 Ill. App. 3d 144, 149 (1996) (Fifth District holds that "[e]rratic driving, such as crossing the center line, is sufficient to justify an investigatory stop").

■ Here, defendant presented no evidence to suggest that his crossing was legal. He suggested that, if he did cross, he made a nonhazardous crossing that stemmed from the closeness of Ketter's pursuit. However, the law does not permit a driver to cross the center line merely because he is being closely followed. See 625 ILCS 5/11—701(a) (West 1998). Therefore, it is clear that Ketter knew no facts to indicate that defendant's crossing was legal. Ketter had a reasonable suspicion that defendant had committed an offense, and his stop of defendant was valid.

■ We now address the validity of defendant's arrest for DUI. A warrantless arrest requires probable cause, which is equivalent to "reasonable grounds." *People v. Sims*, 192 Ill. 2d 592, 614 (2000); *Fortney*, 297 Ill. App. 3d at 87. Probable cause exists if an officer knows facts that would lead a reasonable person to believe that the arrestee has committed an offense. Although probable cause does not require proof beyond a reasonable doubt, it requires more than mere suspicion. *Sims*, 192 Ill. 2d at 614-15.

■ We observe that the trial court expressed no findings about what occurred after the stop. However, defendant presented no evidence to dispute the following of Ketter's assertions: (1) defendant's speech, though understandable, was slurred; (2) defendant smelled strongly of alcohol; (3) defendant admitted that he had consumed several beers since the previous evening; (4) defendant had an open beer

in his vehicle; (5) defendant failed the one-legged-stand test; (6) the HGN test revealed that defendant's eyes were "jerking"; and (7) the PBT indicated an alcohol concentration of 0.07. These uncontested facts leave no doubt that Ketter had probable cause to arrest defendant for DUI. *Cf. People v. Crocker*, 267 Ill. App. 3d 343, 346 (1994) (officer "clearly" had probable cause where defendant had a bloody face and slurred speech, smelled strongly of alcohol, admitted that he had been drinking, and failed two field sobriety tests).

In sum, we determine that Ketter had a reasonable suspicion to stop defendant and probable cause (or "reasonable grounds") to arrest him. Therefore, we reverse the trial court's grant of defendant's motion to suppress and petition to rescind, and we remand the cause.

The judgment of the circuit court of Ogle County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GROMETER and CALLUM, JJ., concur.