No. 2--07--0270          Filed:  2-13-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Nos.  06--DT--917            06--TR--24714 |
| TRAVIS J. WOOD, | ) ) | Honorable William P. Brady, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

Following a traffic stop, the defendant, Travis J. Wood, was charged by complaint in the circuit court of De Kalb County with driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(2) (West 2006)).  He was also notified of the statutory summary suspension of his driving privileges.  The defendant petitioned for the rescission of the suspension and moved to quash his arrest and suppress evidence.  Concluding that the traffic stop was invalid, the trial court rescinded the suspension and granted the defendant's motion to quash and suppress.  The State appeals.  We reverse and remand.

The rescission petition and the motion to quash and suppress were heard together.  At the hearing, the defendant testified that in the early morning hours of December 29, 2006, he drove past his girlfriend's home in Waterman.  The defendant's girlfriend had been working late and he was

unable to reach her, so he wanted to make sure she had gotten home safely. On the way back to his own home in Hinckley, the defendant saw a police vehicle following him. The defendant testified that he stopped at a stop sign on Cedar Street at the intersection with Route 30. Buildings at the corner obstructed his view of traffic on Route 30, so he pulled forward. He then turned onto Route 30. The police vehicle continued to follow him. The defendant stopped at a red light at the intersection of Route 30 and Elm Street. When the light turned green, the defendant proceeded through the intersection. The police vehicle followed defendant for about a mile to the intersection of Route 30 and Route 23. The defendant came to a stop, and then proceeded through the intersection. At that point, the defendant was pulled over.

De Kalb County sheriff's deputy Craig Parnow testified that at about 3:30 a.m., while on patrol in Waterman, he observed the defendant's vehicle traveling very slowly. The vehicle stopped in the middle of the road at one point. Parnow followed the vehicle onto Cedar Street. Parnow testified that there is a stop sign at the intersection of Cedar Street and Route 30. The intersection is marked with a stop line and a crosswalk. According to Parnow, the defendant's vehicle rolled past the "stoplight" at the intersection and stopped in the crosswalk. (Parnow acknowledged that from behind the stop line a driver could not see traffic on Route 30.) The defendant's vehicle turned onto Route 30 and proceeded east to the intersection of Route 30 and Elm Street, which is controlled by a traffic light and marked with a stop line and a crosswalk. The traffic light was red. The defendant's vehicle stopped in the crosswalk, "almost a car length" past the stop line. When the light turned green, the defendant's vehicle proceeded through the intersection, crossed over the center line, and continued slowly toward Route 23. As the defendant's vehicle approached the intersection, it drifted to the right onto the line between the eastbound lane and the right-turn lane. According to

Parnow, the vehicle "stopped approximately a vehicle length beyond the stop line at that intersection." Parnow pulled the defendant over and ticketed him for disobeying a traffic control device at the intersection of Route 30 and Route 23.

Parnow's squad car was equipped with a video camera. He activated the camera as the defendant's vehicle was approaching Route 30 from Cedar Street. A videotape taken by the camera was admitted into evidence and played in court. After viewing the videotape, Parnow conceded that there was no stop line at the intersection of Route 30 and Route 23. However, the tape shows the presence of stop lines and crosswalks at the other two intersections described in Parnow's testimony. Contrary to Parnow's testimony, the defendant's vehicle did not stop beyond the stop line at each of these intersections. Rather, the vehicle was straddling the stop line when it came to a halt at each intersection.

In a rescission hearing, a motorist may challenge the propriety of a traffic stop leading to his or her arrest for DUI. People v. Crocker, 267 Ill. App. 3d 343, 345 (1994). A reviewing court will not disturb the trial court's findings of fact unless against the manifest weight of the evidence. People v. Rush, 319 Ill. App. 3d 34, 38 (2001). However, the trial court's ultimate conclusion as to the legality of the stop is reviewed de novo. Rush, 319 Ill. App. 3d at 38-39. The same standard of review applies to the trial court's ruling on a motion to quash an arrest and suppress evidence. Rush, 319 Ill. App. 3d at 38-39.

"A traffic violation generally provides a sufficient basis for a traffic stop." People v. Cole, 369 Ill. App. 3d 960, 966 (2007). At issue here is whether the defendant violated any traffic law. According to the State, the defendant failed to come to a proper stop at the intersection of Route 30 and Cedar Street and at the intersection of Route 30 and Elm Street. The State maintains that the

defendant stopped improperly because his vehicle came to rest straddling the stop lines at both intersections. The State contends that the trial court's conclusion that the defendant properly brought his vehicle to a stop was based on a misinterpretation of the applicable statutes.

The defendant responds that the trial court "did not misinterpret the statute[s], but correctly found that the version of the incident presented by the arresting officer was not credible because the videotape of the traffic stop contradicted his testimony." It is true that after viewing the videotape the trial court rejected much of Parnow's testimony. The trial court discredited Parnow's testimony that defendant's vehicle crossed the center line after proceeding through the intersection of Route 30 and Elm Street and that the vehicle stopped in the crosswalk at the intersection of Route 30 and Elm Street. Moreover, as noted, the videotape clearly refutes Parnow's testimony that there was a stop line at the intersection of Route 30 and Route 23. However, the trial court's findings on these matters have no bearing on the issue raised by the State--whether the defendant violated any traffic law by bringing his vehicle to a stop straddling the stop lines. The facts relevant to this issue are not in dispute. The trial court expressly found that, at the intersection of Route 30 and Elm Street, "[t]he front portion of [the defendant's] vehicle was over the stop line." Moreover, in his brief, the defendant specifically states that "[t]he tape displays *** a brief, complete stop straddling the stop line" at the intersection of Route 30 and Cedar Street. The question presented is whether the trial court properly applied the law to these facts in concluding that the defendant violated no traffic law. Because the question is one of law, our review is de novo.

Section 11--306(c)(1) of the Illinois Vehicle Code (Code) (625 ILCS 5/11--306(c)(1) (West 2006)) provides that at a red light a driver "shall stop at a clearly marked stop line, but if there is no such stop line, before entering the crosswalk on the near side of the intersection, or if there is no such

crosswalk, then before entering the intersection." With slight variations in wording that are of no significance here, section 11--904(b) of the Code (625 ILCS 5/11--904(b) (West 2006)) imposes the same requirement on a driver approaching an intersection at which a stop sign is posted.[1] In contrast, section 11--1204(b) of the Code (625 ILCS 5/11--1204(b) (West 2006)) requires a driver approaching a stop sign to stop before entering the crosswalk, or, if there is no crosswalk, to stop at a clearly marked stop line. The defendant argues that, because there was a crosswalk at the intersection of Route 30 and Cedar Street, section 11--1204(b) did not mandate that he stop at the stop line. The argument ignores section 11--904(b)'s independent requirement that a driver stop at a stop line. Thus, the defendant was required to stop at the stop line at that intersection as well as at the traffic-light-controlled intersection of Route 30 and Elm Street.

The trial court concluded that the defendant complied with the applicable statutes even though it is undisputed that he stopped his vehicle astride the stop lines rather than behind them. The court explained that, "as Miriam [sic] Webster would tell us, 'at' is used as a function word to indicate presence or occurrence in, on, or near." The State argues that this interpretation of the relevant statutes is erroneous. We agree. "In interpreting a statute, this court's primary objective is to determine and give effect to the intent of the legislature, the best indicator of which is the language of the statute." Harroun v. Addison Police Pension Board, 372 Ill. App. 3d 260, 263 (2007). The trial court expressed the correct dictionary definition of the word "at." See Webster's Third New International Dictionary 136 (1986). However, the task of interpreting the language of a statute cannot always be reduced to "the mechanical application of the dictionary definitions of the

---

[1] Where section 11--306(c)(1) uses the phrases "but if there is no such stop line" and "or if there is no such crosswalk," section 11--904(b) uses the phrases "but if none" and "or if none."

individual words and phrases involved." Whelan v. County Officers' Electoral Board of Du Page County, 256 Ill. App. 3d 555, 558 (1994). Moreover, courts must be careful not to read statutory language in an overly literal manner. Whelan, 256 Ill. App. 3d at 558 ("Courts must shy away from reading language too literally"). Our supreme court has stated that "[a] statute or ordinance must receive a sensible construction, even though such construction qualifies the universality of its language." In re Illinois Bell Switching Station Litigation, 161 Ill. 2d 233, 246 (1994).

The trial court chose a literal interpretation over a sensible one. If a vehicle stops "at" the stop line by straddling it, the line does not mark a definite stopping point; it marks a range of stopping points that varies with the length of a particular vehicle involved. In the case of a relatively small passenger automobile, it may not make much difference, in terms of road safety, whether the vehicle stops behind the line or astride it. However, the vehicles that travel on Illinois roads come in all shapes and sizes. The trial court's interpretation becomes significantly more problematic if applied to a 40-foot-long bus that could project well into an intersection before its rear wheels reach the stop line. Under the trial court's interpretation of the applicable statutes, the bus would have made a proper stop.

We conclude that the General Assembly did not contemplate that stopping astride a clearly marked stop line would constitute compliance with sections 11--306(c)(1) and 11--904(b) of the Code. Because the defendant violated both of these provisions, Parnow was entitled to pull him over.

The defendant also contends that even if he was guilty of a "technical" violation, the trial court did not err in concluding that the traffic stop was unlawful. The only authority he cites is a trio of cases--People v. Faletti, 215 Ill. App. 3d 61 (1991), People v. Decker, 181 Ill. App. 3d 427 (1989),

and People v. Collins, 154 Ill. App. 3d 149 (1987)--holding that a police officer may not stop a vehicle merely because it momentarily crosses the center line. As the State notes, however, this court has expressly rejected the holdings of these cases. Rush, 319 Ill. App. 3d at 39. In Rush we held that an officer may stop a vehicle that has momentarily crossed the center line unless the officer knows of additional facts that make it reasonably apparent that it was legal for the vehicle to do so. Rush, 319 Ill. App. 3d at 40.

For the foregoing reasons, we reverse the order of the circuit court of De Kalb County rescinding the statutory summary suspension of the defendant's driving privileges and granting his motion to quash and suppress, and we remand the cause.

Reversed and remanded.

McLAREN and CALLUM, JJ., concur.