[Cite as *State v. Tyson*, 2015-Ohio-3530.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,           CASE NO. 9-14-49

      v.

BRITTANY MICHELLE TYSON,          O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 14CR457

Judgment Reversed and Cause Remanded

Date of Decision: August 31, 2015

APPEARANCES:

    *Brent W. Yager* for Appellant

    *Kevin P. Collins* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the December 22, 2014 judgment entry of the Marion County Court of Common Pleas granting defendant-appellee's, Brittany M. Tyson ("Tyson"), motion to suppress. For the reasons that follow, we reverse.

{¶2} This case stems from a January 14, 2014 traffic stop of a vehicle of which Tyson was a passenger by Ohio Highway State Patrol Trooper Joshua Beynon ("Trooper Beynon") after the vehicle's driver, Bryan S. Miller ("Miller"), failed to stop at a clearly marked stop line. As a result of the traffic stop, Tyson was indicted on October 9, 2014 for possession of heroin in violation of R.C. 2925.11(A), (C)(6), a second-degree felony. (Doc. No. 1).

{¶3} On October 14, 2014, Tyson appeared for arraignment and entered a plea of not guilty. (Doc. No. 7).

{¶4} On November 14, 2014, Tyson filed a motion to suppress. (Doc. No. 24). On December 11, 2014, the State filed a response to Tyson's motion to suppress. (Doc. No. 31). After a hearing on December 12, 2014, the trial court granted Tyson's motion to suppress on December 22, 2014. (Doc. No. 33).

{¶5} The State filed its notice of appeal on December 23, 2014. (Doc. No. 36). It raises three assignments of error for our review. We will address the

State's first assignment of error, followed by its second assignment of error. Based on our conclusion, the State's third assignment of error is moot.

### Assignment of Error No. I

**The Trial Court Abused its Discretion by Granting the Defendant/Appellees' Motion to Suppress the Traffic Stop and by Applying the Exclusionary Rule.**

{¶6} In its first assignment of error, the State argues that the trial court abused its discretion by granting Tyson's motion to suppress because Trooper Beynon had a reasonable articulable suspicion to stop the vehicle in which she was riding, which was operated by Miller. In the alternative, the State argues that if Trooper Beynon mistakenly applied R.C. 4511.43(A) to stop Miller, the exclusionary rule does not apply since Trooper Beynon was acting in good faith because he reasonably and mistakenly applied R.C. 4511.43(A).

{¶7} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's

conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). "De novo review is independent, without deference to the lower court's decision." *State v. Robertson*, 3d Dist. Henry No. 7-14-16, 2015-Ohio-1758, ¶ 17, quoting *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

{¶8} Because the facts are not in dispute, we proceed directly to reviewing de novo the trial court's conclusion that Trooper Beynon did not have a reasonable articulable suspicion to stop Miller.

{¶9} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9; *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12.

> Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such

violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Jenkins* at ¶ 9, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶10} "A traffic stop constitutes a seizure and implicates the protections of the Fourth Amendment" but "'is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime.'" *State v. Dillehay*, 3d Dist. Shelby No. 17-12-07, 2013-Ohio-327, ¶ 13, citing *State v. Johnson*, 3d Dist. Hancock No. 5-07-43, 2008-Ohio-1147, ¶ 16; *State v. Aldridge*, 3d Dist. Marion No. 9-13-54, 2014-Ohio-4537, ¶ 10, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. "The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'" *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, ¶ 18, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). "In determining whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances." *Steinbrunner* at ¶ 14, citing *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a

stop." *State v. McClellan*, 3d Dist. Allen No. 1-09-21, 2010-Ohio-314, ¶ 38, citing *State v. Claiborne*, 2d Dist. Montgomery No. 19060, 2002-Ohio-2696.

**{¶11}** In addition to a reasonable and articulable suspicion of criminal activity, "[p]robable cause is certainly a complete justification for a traffic stop," but it is not required to justify a traffic stop. *Mays* at ¶ 23. "Probable cause" is a stricter standard than "reasonable and articulable suspicion" and subsumes "reasonable and articulable suspicion." *Id.*, citing *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). Accordingly, "an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop." *State v. Haas*, 3d Dist. Henry No. 7-10-15, 2012-Ohio-2362, ¶ 16, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). *See also Mays* at ¶ 24.

**{¶12}** Here, Trooper Beynon stopped Miller for violating R.C. 4511.43(A), which provides, in relevant part:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle * * * approaching a stop sign *shall stop at a clearly marked stop line*, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it.

(Emphasis added.) Because the parties dispute whether Miller stopped *at* a clearly marked stop line under R.C. 4511.43(A), we must determine what is required of a motorist under R.C. 4511.43(A). We review de novo the interpretation of a statute. *Robertson*, 2015-Ohio-1758, at ¶ 17, citing *State v. Brennco, Inc.*, 3d Dist. Allen No. 1-14-24, 2015-Ohio-467, ¶ 6, citing *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 9 and *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, ¶ 9; *State v. Thornsbury*, 4th Dist. Lawrence No. 12CA9, 2013-Ohio-1914, ¶ 8.

{¶13} "'"The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute."'" *Robertson* at ¶ 18, quoting *Thornsbury* at ¶ 8, quoting *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 9. *See also Brennco, Inc.* at ¶ 6. "To determine the legislative intent, we first look at the language of the statute itself and if the language is clear and unambiguous, we apply it as written and no further construction is required." *Id.*, quoting *Brennco, Inc.* at ¶ 6, citing *Straley* at ¶ 9 and *Pariag* at ¶ 11.

{¶14} However, "[a] statute is ambiguous if its language is susceptible to more than one reasonable interpretation." *Id.*, quoting *Thornsbury* at ¶ 8, citing *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513 (1996). "Only if a statute is unclear and ambiguous, may we interpret it to determine the legislature's intent." *Id.*, quoting *Thornsbury* at ¶ 8, citing *State v. Chappell*, 127

Ohio St.3d 376, 2010-Ohio-5991, ¶ 16. *See also State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 38 ("If a statute is ambiguous, 'courts seek to interpret the statutory provision in a manner that most readily furthers the legislative purpose as reflected in the wording used in the legislation.'"), quoting *Clyde* at 513.

{¶15} If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

(A)  The *object sought to be attained*;

(B)  The circumstances under which the statute was enacted;

(C)  The legislative history;

(D)  The common law or former statutory provisions, including laws upon the same or similar subjects;

(E)  The *consequences* of a particular construction;

(F)  The *administrative construction* of the statute.

(Emphasis added.)  R.C. 1.49.

{¶16} The Revised Code does not define "at" or what it means to stop *at* a clearly marked stop line.  "In the absence of a definition of a word or phrase used in a statute, words are to be given their common, ordinary, and accepted meaning."  *Black* at ¶ 39, citing *Wachendorf v. Shaver*, 149 Ohio St. 231 (1948), paragraph five of the syllabus.

**{¶17}** There is little guidance available regarding the common, ordinary, and accepted meaning of what it means to stop *at* a clearly marked stop line. In particular, the Supreme Court of Ohio has not addressed the proper interpretation of R.C. 4511.43(A) or what it means to stop *at* a clearly marked stop line. The current edition of Black's Law Dictionary also does not define "at." However, "at" is defined by Merriam-Webster's Collegiate Dictionary as "used as a function word to indicate presence or occurrence *in, on, or near*." (Emphasis added.) *Merriam-Webster's Collegiate Dictionary* 77 (11th Ed.2009). Stopping "in, on, or near" can mean a multitude of things. Accordingly, we conclude that R.C. 4511.43(A)'s requirement that a motorist stop *at* a clearly marked stop line is reasonably susceptible to more than one interpretation.

**{¶18}** That stopping *at* a clearly marked stop line is reasonably susceptible to more than one interpretation is demonstrated by the split of courts on the issue. In interpreting nearly identical stop-sign statutes, some courts have concluded that so long as a driver stops on or near a clearly marked stop line, he or she is in compliance with the statute. *See, e.g.*, *State v. Drushal*, 9th Dist. Wayne No. 13CA0028, 2014-Ohio-3088, ¶ 12, *abrogated on other grounds by Heien v. North Carolina*, __ U.S. __, 135 S.Ct. 530 (2014); *City of Olathe v. McGregor*, Ks.App. No. 108, 316, 2013 WL 5870040, *3 (Oct. 25, 2013); *Mumper v. State*, Tx.App. No. 05-08-00141-CR, 2009 WL 201142, *2 (Jan. 29, 2009). Other courts have

concluded that a driver must stop *before* any part of his or her vehicle crosses a clearly marked stop line. *See, e.g.*, *People v. Wood*, 379 Ill.App.3d 705, 708-709 (2008); *U.S. v. Mack*, D.Vt. No. 5:14-cr-28, 2014 WL 7140604, *8, fn. 6 (Dec. 12, 2014); *U.S. v. Smith*, M.D.Fla. No. 2:06-cr-42-FtM-29SPC, 2006 WL 2226313, *7 (Aug. 3, 2006); *State v. Daniels*, 158 So.3d 629, 630-631 (Fla.2014); *People v. Binkowski*, 157 Cal.App.4th Supp. 1, 6 (2007); *State v. Denner*, 298 Wis.2d 249, 726 N.W.2d 357, ¶ 7, fn. 2 (2006). Although this court has not specifically defined what it means to stop at a clearly marked stop line, we previously affirmed a stop-sign violation in *State v. Rannes* where the arresting officer testified that Rannes "'made an improper stop'" because "she 'went past the clearly marked stop line in the roadway'" and assumed in *State v. Aldridge* that Aldridge's failure to "stop before a marked stop line" was a violation of R.C. 4511.43(A) to justify the arresting officer's stop and detention of Aldridge. *State v. Rannes*, 3d Dist. Logan No. 8-02-12, 2002-Ohio-4691, ¶ 39-40; *Aldridge*, 2014-Ohio-4537, at ¶ 2, 5, 10.

{¶19} Because we conclude that the statute is unclear and ambiguous, we must apply the principles of statutory interpretation to determine what R.C. 4511.43(A) requires of a motorist. *See Black*, 142 Ohio St.3d 332, 2015-Ohio-513, at ¶ 45. To determine the General Assembly's intent, we will consider the consequences of a particular construction of the statute, the object

sought to be obtained by the statute, and the administrative construction of the statute. R.C. 1.49(A), (E), (F).

**{¶20}** We conclude that the General Assembly did not contemplate that stopping astride—where any portion of a vehicle extends across—a clearly marked stop line would constitute compliance with R.C. 4511.43(A) and hold that a motorist must stop his or her vehicle before the front-most portion of the vehicle breaks the plane of the outermost edge of a clearly marked stop line. In other words, to comply with the statute, a motorist must stop his or her vehicle before any portion of his or her vehicle crosses the edge of the stop line that is furthest from the front-most portion of his or her approaching vehicle.

**{¶21}** First, the consequences of interpreting "at" under R.C. 4511.43(A) to permit a motorist to stop on or near a clearly marked stop line does not readily further any legislative purpose because "[i]f a vehicle stops 'at' the stop line by straddling it, the line does *not* mark a definite stopping point; it marks a range of stopping points that varies with the length of a particular vehicle involved." (Emphasis added.) *Wood*, 379 Ill.App.3d at 709. In crafting R.C. 4511.43(A), it is illogical that the General Assembly would want to establish a range of stopping points for a motorist as opposed to a definite stopping point. This point is best described by the Illinois Court of Appeals in *Wood*:

In the case of a relatively small passenger automobile, it may not make much difference, in terms of road safety, whether the vehicle stops behind the line or astride it. However, the vehicles that travel on * * * roads come in all shapes and sizes. The trial court's interpretation becomes significantly more problematic if applied to a 40-foot-long bus that could project well into an intersection before its rear wheels reach the stop line. Under the trial court's interpretation of the applicable statutes, the bus would have made a proper stop.

*Id. See also Binkowski*, 157 Cal.App.4th Supp. at 6 (concluding that the California legislature "could not have intended such an absurd—and potentially perilous—result" if the court interpreted the stop-sign statute to permit a motorist to stop astride a clearly marked stop line). In addition, interpreting "at" under R.C. 4511.43(A) in this manner could result in an unconstitutional disparate application of the statute since it could be applied differently to motorists depending on the size or length of the vehicle they are operating. *See, e.g.*, *State ex rel. Patterson v. Indus. Comm.*, 77 Ohio St.3d 201, 204 (1996) (discussing the constitutional guarantee "that all similarly situated individuals be treated in a similar manner").

{¶22} Moreover, the object sought to be attained in regulating Ohio's highways is the safety of motorists and pedestrians. Interpreting "at" under R.C.

4511.43(A) to permit a motorist to stop on or near a clearly marked stop line does not further that purpose. In *Daniels*, the Florida Court of Appeals concluded that the stop-sign statute at issue in that case requires a motorist to stop before any part of his or her vehicle "crosses the line" because "[a] stop line protects other motorists and pedestrians only if a vehicle stops when its front bumper reaches that line." *Daniels*, 158 So.3d at 631. In making that conclusion, the Florida Court of Appeals acknowledged that the purpose of a stop-sign statute is "to require a vehicle to stop before it is in a position where it could impede or hit pedestrians who might be in a crosswalk, or cross-traffic that could be in an intersection." *Id.* In addition, stop lines are often used to protect other motorists by providing a point at which a vehicle must stop to allow ample room for large vehicles to complete turns at an intersection. As a result, we interpret the statute to require a motorist to stop prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of the clearly marked stop line to most readily further the General Assembly's purpose in enacting R.C. 4511.43(A).

{¶23} Further support that the General Assembly did not contemplate that stopping astride a clearly marked stop line would constitute compliance with R.C. 4511.43(A) can be found in the administrative construction of the statute. In particular, the Ohio Manual of Uniform Traffic Control Devices (OMUTCD),

which provides the official specifications for highway signs and markings as mandated by R.C. 4511.09, supports our holding. *See State v. Phillips*, 3d Dist. Logan No. 8-04-25, 2006-Ohio-6338, ¶ 25, 30-31 (consulting the OMUTCD for statutory-construction purposes), *abrogated on other grounds by Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at ¶ 15; *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 4 (noting that the OMUTCD was adopted by the Ohio Department of Transportation under R.C. 4511.09). Specifically, the OMUTCD describes the use of a "stop line": "Stop lines should be used to indicate the point *behind* which vehicles are required to stop, in compliance with a traffic control signal." (Emphasis added.) OMUTCD, Section 3B.16 (2012 Ed.).

**{¶24}** Therefore, we conclude that it is unlawful to stop astride a clearly marked stop line, and that a motorist must stop his or her vehicle prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of that clearly marked stop line.

**{¶25}** Based on that conclusion, we hold that Trooper Beynon had probable cause to stop Miller since Miller stopped his vehicle astride a clearly marked stop line. *See Mays* at ¶ 23, 24; *Haas*, 2012-Ohio-2362, at ¶ 23. Furthermore, since we hold that Trooper Beynon had probable cause to stop Miller based on his violation of R.C. 4511.43(A), we also hold that the exclusionary rule does not apply. Too, we need not analyze the State's alternative argument—whether Trooper Beynon

possessed a reasonable articulable suspicion to stop Miller based on a reasonable mistake of law under *Heien*. *See* 135 S.Ct. at 539.

{¶26} Therefore, the trial court erred in granting Tyson's motion to suppress the traffic stop. The State's assignment of error is sustained.

### Assignment of Error No. II

**The Trial Court Abused its Discretion in Determining the Scope of the Detention of Defendant/Appellee Brittany Tyson was Not Permissible as this was Not an Issue Raised by Brittany Tyson.**

{¶27} In its second assignment of error, the State argues that the trial court abused its discretion by considering an issue not raised by Tyson in her motion to suppress. Specifically, the State argues that the trial court erred by considering the duration of Tyson's detention during the traffic stop.

{¶28} We apply an abuse-of-discretion standard when reviewing a trial court's decision to sua sponte raise and consider suppression issues outside of the scope of Crim.R. 47. *See State v. Pilot*, 12th Dist. Clermont Nos. CA2003-03-023 and CA2003-03-024, 2004-Ohio-3669, ¶ 36. *See also State v. Land*, 3d Dist. Marion No. 9-13-39, 2014-Ohio-1877, ¶ 13, 19 (concluding that the trial court abused its discretion in sua sponte raising a motion to suppress). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

**{¶29}** Although Tyson did not address the duration of her detention during the traffic stop in her motion to suppress or at the suppression hearing, the trial court sua sponte raised that issue at the suppression hearing and concluded in its judgment entry that she was detained longer than is permissible by law.

**{¶30}** "'It is settled law in Ohio that a motion to suppress evidence must make clear the grounds upon which the motion is based in order that the prosecutor may prepare his case and the court may know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits.'" *State v. Byrnes*, 2d Dist. Montgomery No. 25860, 2014-Ohio-1274, ¶ 10, quoting *Dayton v. Dabney*, 99 Ohio App.3d 32, 37 (2d Dist. 1994), citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). In particular, Crim.R. 47 specifies that a motion to the trial court "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." "The Supreme Court [of Ohio] has stated that 'this provision, in the context of the ruling case law and when applied to a motion to suppress evidence obtained by search and seizure, requires that the prosecution be given notice of the *specific legal and factual grounds* upon which the validity of the search and seizure is challenged.'" (Emphasis sic.) *Byrnes* at ¶ 10, quoting *Dabney* at 37, quoting *Wallace* at 219.

**{¶31}** "Thus, 'the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search and

seizure.'" *State v. Duke*, 9th Dist. Lorain No. 12CA010225, 2013-Ohio-743, ¶ 11, quoting *Wallace* at 218. "The defendant 'must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of issues to be decided.'" *Id.*, quoting *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. "'"Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal."'" *Id.*, quoting *Dabney* at 37, quoting *Wallace* at 218.

**{¶32}** We hold that the trial court abused its discretion in sua sponte raising and considering the duration of Tyson's detention during the traffic stop because the State was not adequately notified that the duration of Tyson's detention was an issue to be decided at the suppression hearing. In her motion to suppress, Tyson argued that Trooper Beynon did not have a reasonable articulable suspicion to stop Miller, and she argued, without citation to the record or authority, that the canine sniff was not in accordance with Ohio State Highway Patrol policy. Since this case involves the same facts as Miller's case, the trial court scheduled the hearing on Tyson's motion to suppress at the same time as the hearing on Miller's motion to suppress. As such, the State responded to Tyson's and Miller's motions to suppress in the same response brief. In its response, the State stated:

> The Defendants' [sic] raises [sic] several issues in their Motions to
>
> Suppress. Those issues are; [sic] the officer did not have probable

cause or reasonable, articulable basis to conduct a traffic stop of the vehicle Defendants' [sic] were in; that <u>Miranda</u> was not properly given to Mr. Miller; that the duration of the stop was unreasonable, per Mr. Miller and per Ms. Tyson whether or not the canine sniff was conducted in a proper manner.

(Underline sic.) (Doc. No. 31).

{¶33} On appeal, Tyson argues that the State "acknowledges that the trial court discussed the issue with counsel at the beginning of the suppression hearing." (Appellee's Brief at 6-7, citing Appellant's Brief at 9). This is a mischaracterization of what the trial court discussed with counsel at the beginning of the suppression hearing. In questioning Tyson's counsel as to her argument regarding the canine sniff, the following exchange took place:

[Trial Court]:  Well, I guess I'm trying to understand if it's a -- if that's part of your Motion to Suppress or not, that issue, so we understand the issues. Not necessarily thee [sic] -- how big your concern is. I mean, it's -- it seems to me that one of the issues is whether the Defendants were unlawfully restrained longer than you know, was appropriate or necessary --

[Tyson's Counsel]: I know [Miller's Counsel] --

[Trial Court]: -- which the dog search comes into that a bit if they're being detained for that purpose. I'm not sure if there's any other issues here or not. And I don't know if you've raised that issue or not, [Miller's Counsel]?

[Miller's Counsel]: I did, Your Honor. My -- my main issues will be thee [sic] probable cause, reasonable suspicion of the stop as well --

[Trial Court]: For the stop --

[Miller's Counsel]: -- as the length of detention.

[Trial Court]: Length of detention.

[Miller's Counsel]: Those are the two primary issues.

(Dec. 11, 2014 Tr. at 3-4). At no time did Tyson indicate that she was challenging the duration of her length of detention.

{¶34} Moreover, Tyson argues on appeal that because Miller raised the issue of the duration of the length of his detention, the State was sufficiently notified that it needed to present evidence that Tyson was properly detained. However, that Miller argued the issue in his motion to suppress and at the

suppression hearing does *not* put the State on notice to address the length of Tyson's detention.

{¶35} At the suppression hearing, the only testimony offered was that of Trooper Beynon. Tyson's counsel neither directed questions to Trooper Beynon related to the duration of Tyson's detention, nor asserted any argument related to the duration of her detention to the trial court. (*See id.* at 36-38, 60, 68-69). Nevertheless, the trial court at the suppression hearing posed questions to Trooper Beynon related to the duration of Tyson's detention. (*See id.* at 54-59). Although the trial court posed questions to Trooper Beynon related to the duration of Tyson's detention, at no time did the trial court indicate that the duration of her detention was an issue it was considering, and at no time did the trial court provide the parties an opportunity to prepare and present arguments on that issue. A trial court "is free to expand the scope of a suppression hearing beyond the issues specified in the motion to suppress 'so long as the matters within the expanded scope were material to the suppression sought, and so long as the State had a reasonable opportunity to prepare itself for the hearing.'" *Byrnes*, 2014-Ohio-1274, at ¶ 12, quoting *State v. Blackburn*, 2d Dist. Clark No. 3084, 1994 WL 95224, *4 (Mar. 23, 1994). *See also Land*, 2014-Ohio-1877, at ¶ 23 (concluding that the trial court erred by not allowing the State time to respond to the newly raised issue of suppression). A trial court's rogue detour at a

suppression hearing does not put the State on notice of an issue to be decided. *See Dabney*, 99 Ohio App.3d at 39; *Duke*, 2013-Ohio-743, at ¶ 12 ("Because the trial court raised the K-9 reliability issue sua sponte, and that issue was not raised in Duke's motion to suppress, the State was not provided with an opportunity to adequately prepare arguments and present evidence on that issue."); *Byrnes* at ¶ 14 ("If the trial court had later changed its mind about the scope of the hearing, it should have informed the parties so that the second issue could have been fairly litigated."). In *Dabney*, the Second District Court of Appeals concluded that the trial court "interjecting a new issue which was not supported by any evidence whatsoever, and basing its decision to suppress the evidence on th[at] new issue, without giving the city the opportunity to present evidence on the issue" "was prejudicial error to the city." *Dabney* at 39. Similar to the trial court in *Dabney*, the trial court here "crossed the boundary between the judicious and impartial conduct of a trial and the advocacy of one party's case." *Id.* at 40.

{¶36} Tyson did not challenge the duration of her detention in her suppression motion or at the suppression hearing, and the trial court did not provide the State notice and the opportunity to present evidence on that issue. Therefore, the trial court abused its discretion by sua sponte raising and addressing in its judgment entry granting Tyson's motion to suppress an issue not raised by Tyson in her motion to suppress or at the suppression hearing.

{¶37} For these reasons, the State's second assignment of error is sustained.

### Assignment of Error No. III

**In the Alternative Even if this Court Determines the Scope of Detention Issue Regarding Brittany Tyson is Appropriate the Court Abused its Discretion in Determining the Length of the Detention of Defendant/Appellee was in Violation of the Defendant/Appellee's Constitutional Rights.**

{¶38} In its third assignment of error, the State argues that if this court determines the trial court properly determined the scope of Tyson's detention, the trial court abused its discretion in determining that the length of her detention violated her constitutional rights.

{¶39} In light of our decision to sustain the State's second assignment of error, its third assignment of error is rendered moot, and we decline to address it. *Duke*, 2013-Ohio-793, at ¶ 14, citing App.R. 12(A)(1)(c).

{¶40} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**